UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** <br><br> v. <br><br><br> **MIGUEL TREVINO MORALES,** <br> also known as "Z-40," "Zeta40," "40," "Cuarenta," "Mike." <br><br><br> **Defendants.** | **CRIMINAL NO. 08-CR-057 (TNM)** |

## GOVERNMENT'S MOTION FOR CONFLICT INQUIRY

The United States of America, by and through the undersigned attorneys, requests that the Court conduct a conflict inquiry as to Mr. Frank Perez's representation of defendant Miguel Trevino Morales ("Trevino Morales"). Mr. Perez either represents or has represented several potential witnesses who may testify against Miguel Trevino Morales in this case. Mr. Perez has acknowledged the conflict and told the Government that he would withdraw. He has, however, not yet withdrawn—thus necessitating the filing of this motion.[1]

## BACKGROUND

### A. The Gulf Cartel and Zetas

Between approximately 2000 and 2010, the drug-trafficking cartels known as Los Zetas ("Zetas") and the Gulf Cartel formed an alliance known as "The Company." The Zetas served as

---

[1] The Government filed an earlier conflict motion in which it drew the Court's attention to potential conflicts arising from lawyers' past or present representation of co-defendants in this case. *See* ECF No. 708. That motion did not concern Mr. Perez who does not, to the Government's knowledge, represent any co-defendants.

the armed militaristic wing of the cartel and maintained control of drug trafficking routes. The alliance fractured in the summer of 2010 after a period of intense violence between the organizations. From that time on, the two organizations operated as independent drug trafficking organizations, which imported tonnage quantities of cocaine and marijuana into the United States.

Trevino Morales, also known as "Z-40," was the day-to-day leader of the Zetas until his arrest in Mexico. Even after his arrest in Mexico, he continued to direct the cartel's activities from Mexican prison for a decade. As the leader of the Zetas, he inflicted terroristic violence on the civilian population, on law enforcement, and on rival cartels to enable narcotics trafficking, to escape detection and arrest, and to control large swaths of northern Mexico.

### B. Procedural History

On March 13, 2008, a grand jury in this district returned an indictment charging Trevino Morales and several other defendants with, among other things, conspiring to manufacture or distribute cocaine and marijuana knowing and intending that it would be imported into the United States. ECF No. 1. Trevino Morales was charged in several superseding indictments. Most recently, a Fifth Superseding Indictment returned on August 20, 2024, charges Trevino Morales with four counts, including a continuing criminal enterprise ("CCE") count under 21 U.S.C. § 848. The CCE count alleges Trevino Morales's involvement in, among other things, five distinct murder conspiracy violations, several of which involved horrific acts of violence and the killings of suspected witnesses and informants and of law enforcement officials.

Trevino Morales was expelled from Mexico and delivered to U.S. custody on or around February 27, 2025.

### C. Mr. Perez's Representations

Frank Perez entered an appearance for Trevino Morales on March 10, 2025. ECF No. 666. Shortly after Mr. Perez entered his appearance, he acknowledged to Government counsel that he may be conflicted as a result of his representations of potential witnesses in the case and stated that he would be withdrawing. Mr. Perez did not file a motion to withdraw. The Government made several follow-up inquiries and was informed that Mr. Perez required more time to discuss the matter with his client and to file a motion to withdraw. On July 21, 2025, Government counsel sent an email to all defense counsel as well as the Court-appointed conflicts counsel stating that it had discussed potential conflicts with Mr. Perez and had been informed that Mr. Perez would be withdrawing by the end of the week. Mr. Perez did not withdraw by the end of the week but instead requested additional time. The Government granted Mr. Perez additional time. But, after several weeks and months of extensions, Perez still has not filed a motion to withdraw.

### ARGUMENT

"[A] court confronted with and alerted to possible conflicts of interest must take adequate steps to ascertain whether the conflicts warrant separate counsel." *Wheat v. United States*, 486 U.S. 153, 159-160 (1988). Not only do criminal defendants have a Sixth Amendment right to an effective advocate, *see id.* at 159, "federal courts [also] have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession," *id.* at 160; *see id.* at 161 (noting that "trial courts confronted with multiple representations face the prospect of being 'whip-sawed' by assertions of error no matter which way they rule").

Unlike the previous conflicts to which the Government directed the Court's attention, Mr. Perez does not represent—and to the Government's knowledge has not represented—a co-defendant charged in the same indictment or set for trial at the same time as his client in this case.

3

Thus, the conflict does not implicate Federal Rule of Criminal Procedure 44.  *See* Fed R. Crim. P. 44(c)(1)(A) (making the rule applicable only to joint representation of defendants who "have been charged jointly . . . or have been joined for trial . . . .").  Nonetheless, "the Sixth Amendment and the Court's inherent power to ensure the orderly administration of justice require the Court to consider" potential conflicts of interest in criminal cases that go beyond those identified in Rule 44.  *United States v. Childress*, 731 F. Supp. 547, 549 n.2 (D.D.C. 1990); *see, e.g. id.* (addressing conflict of separately charged defendants not set for trial at the same time).  Indeed, "numerous cases have recognized [that the Rules of Professional Conduct] require[] disqualification when a former client seeks to cooperate with the government and testify against the present client." *United States v. Bikundi*, 80 F. Supp. 3d 9, 18 (D.D.C. 2015); *e.g. United States v. Davis*, 780 F. Supp. 21, 23 (D.D.C. 1991).  That is so whether the clients are jointly charged co-defendants within the meaning of Rule 44 or not.  *See also Nix v. Whiteside,* 475 U.S. 157, 188 n.7 (1986) (Blackmun, J., concurring) (observing that "an attorney who has previously represented one of the state's witnesses has a continuing obligation to that former client not to reveal confidential information received during the course of the prior representation. That continuing duty could conflict with his obligation to his present client, the defendant, to cross-examine the state's witnesses zealously").

For the foregoing reasons, the Government requests that the Court conduct a conflicts inquiry as to Mr. Perez's representation of Miguel Trevino Morales.  The Court may begin the inquiry by asking Mr. Perez if he intends to withdraw as counsel, as he previously represented.  If he no longer intends to withdraw, the Government is willing, upon request, to submit either to the Court-appointed conflicts counsel or to the Court the information in its possession regarding Mr.

4

Perez's past or current representations that may give rise to a conflict of interest in this case.[2] Because Mr. Perez's client in this case—Miguel Trevino Morales—is charged with serious offenses and has a demonstrated history of retaliating against and murdering potential witnesses against him, the Government requests that the Court order that any such submission be made on an *ex parte* basis and not be made available to Trevino Morales or his counsel, in this case, other than Mr. Perez and the conflicts counsel whom the Court has appointed. *See, e.g.*, *United States v. Edelin*, 128 F. Supp. 2d 23, 29 (D.D.C. 2001) (declining to disclose witness identities because "[t]he indictment, supported by a finding of probable cause by the grand jury, shows multiple acts of violence by various defendants against potential witnesses against them.").

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court conduct a conflict inquiry regarding Mr. Perez's representation of Miguel Trevino Morales and Mr. Perez's other current or past clients. After the Court has conducted such an inquiry, the Government requests the opportunity to make a further submission on whether Mr. Perez's continued representation of Miguel Trevino Morales is appropriate.

Respectfully Submitted,

MARLON COBAR, Chief
Narcotic and Dangerous Drug Section
Criminal Division
United States Department of Justice

By:    /s/ D. Hunter Smith
         D. Hunter Smith
         Kirk Handrich
         Jayce Born

---

[2] The information that the Government has regarding Mr. Perez's prior representations may of course be incomplete, so the Court may also invite Mr. Perez to supplement the Government's submission.

5

                                        Trial Attorneys  
                                        Narcotic and Dangerous Drug Section  
                                        Criminal Division  
                                        U.S. Department of Justice  
                                        145 N Street, NE  
                                        Washington, D.C. 20530  
                                        Tel.:   (202) 514-0917  
                                        Email:  David.H.Smith@usdoj.gov

## **CERTIFICATE OF SERVICE**

     I hereby certify that a copy of the foregoing was filed via CM/ECF on this 29th day of August 2025.

                                                     */s/ D. Hunter Smith*
                                                   D. Hunter Smith
                                                   Trial Attorney
                                                   Narcotic and Dangerous Drug Section
                                                   Criminal Division
                                                   Department of Justice