UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| PLAINTIFF | § | |
| | § | |
| V. | § | CASE NO. 08-CR-00057-TNM |
| | § | |
| MIGUEL ANGEL TREVINO-MORALES (4) | § | |
| DEFENDANT | § | |

**DEFENDANT MIGUEL ANGEL TREVINO-MORALES'
MOTION TO DISMISS COUNT THREE AND
VIOLATIONS ONE THROUGH FIVE OF COUNT ONE**

The Accused, Miguel Angel Treviño Morales, respectfully moves this Court to dismiss Count Three and Violations 1 through 5 of Count One of the Fifth Superseding Indictment (Document ("Doc.") 578). In making this Motion, Mr. Treviño relies on his Constitutional rights to indictment by a grand jury, to due process, to notice, to a fair trial, to be protected against double jeopardy, other rights protected by the Fifth and Sixth Amendments to the United States Constitution, and Rule 7 of the Federal Rules of Criminal Procedure.[1]

In support of this Motion, Mr. Treviño states as follows:

1. Mr. Treviño was first charged in this case in 2008, when he was charged in two counts of an Indictment. Doc. 3.

2. At that time, Mr. Treviño was charged in Count One with conspiracy to distribute cocaine for importation into the United States and Count Two with distribution of cocaine for importation into the United States. *Id.*

3. The indictment did not allege any involvement in murder conspiracies, nor was Mr. Treviño charged with use of a firearm.

---

[1] Contemporaneously with the filing of the instant motion, co-defendant Omar Treviño Morales is filing the same exact motion.

4. Subsequent superseding indictments were issued in 2009, 2010, 2012, and 2013. Doc. 6 (Superseding Indictment); 27 (Second Superseding Indictment), 61 (Third Superseding Indictment), and 159 (Fourth Superseding Indictment). None of these indictments alleged murder conspiracies or use of a firearm.

5. On August 20, 2024, the operative Fifth Superseding Indictment was returned. Doc. 578.

6. This indictment charges Mr. Treviño for the first time with use of a firearm in violation of 18 U.S.C. § 924(c). *See id.* at 14–15. The indictment alleges that Mr. Treviño used a firearm "during and in relation to one or more drug trafficking crimes" "[f]rom in or about January 2005 and continuing . . . up to and including the date of the filing of this Indictment, both dates being approximate and inclusive . . . ." *Id.* at 14. In other words, the indictment alleges a § 924(c) violation that occurred in an unidentified place on an unidentified date during a nearly twenty-year period.

7. The indictment also charges Mr. Treviño for the first time with Continuing Criminal Enterprise ("CCE"). *See id.* at 4–13.

8. According to the indictment, the CCE began "no later than in or about January 2003, and continuing thereafter, up to and including the date of the filing of this Indictment, both dates being approximate and inclusive . . . ." *Id.* at 4. The indictment thus covers a more than twenty-one-year period.

9. The indictment also alleges that the CCE took place "in Mexico, Guatemala, Venezuela, Colombia, the United States, and elsewhere," rendering the indictment both temporally and geographically broad. *See id.* at 4.

10. To prove the CCE charge, in relevant part, the government must prove that Mr. Treviño (1) committed a felony violation of Subchapter I or II of Chapter 13 of Title 21, and (2) that "violation is part of a continuing series of violations" of the same subchapters. 21 U.S.C. § 848(c).

11. The jury must be unanimous as to each of the individual violations that constitute the continuing series of violations. *Richardson v. United States*, 526 U.S. 813 (1999).

12. In this case, five of the violations alleged against Mr. Treviño are murder conspiracies in which killings resulted. Doc. 578 at 5–7. Each of the violations are broadly worded and lack specificity as to critical facts such as whom Mr. Treviño allegedly conspired to kill, where, with whom, when, who died, etc.

13. These violations provide constitutionally insufficient notice. The charged CCE violations give Mr. Treviño no idea whom he is accused of conspiring to murder, with whom he allegedly conspired, or any other details from which he could glean what crime he is alleged to have committed. Through this indictment, the government has managed to charge Mr. Treviño with an unknown number of murders in unknown places at unknown times with unknown people. None of the alleged victims are named and none of the alleged murder locations are identified.

14. For similar reasons, the firearm charge in Count Three provides constitutionally insufficient notice. It gives Mr. Treviño no idea what firearms he is accused of carrying, when, where, or during what drug trafficking crimes. Instead, it alleges a nearly twenty-year period in which Mr. Treviño allegedly committed some unknown firearms violation.

15. Moreover, counsel and Mr. Treviño have conducted a review of the materials provided by the government in discovery productions to date. Counsel have not seen any report, photograph, recording, or any other material that contains information relating to the alleged murder conspiracies or the alleged § 924(c) violation. In short, the government has not provided anything that supports the vague allegations described above.

16. It is impossible for Mr. Treviño to prepare a defense when it is this unclear what he is charged with doing.

17. Moreover, because of its lack of specificity, these charges would not allow Mr. Treviño

3

plead a double jeopardy bar to a subsequent prosecution.

18. Both Count Three and Violations One through Five of Count One are thus constitutionally defective and must be dismissed.

## ARGUMENT

### 1. The Law Governing Grand Jury Indictments.

"Any discussion of the purpose served by a grand jury indictment in the administration of federal criminal law must begin with the Fifth and Sixth Amendments to the Constitution." *Russell v. United States*, 369 U.S. 749, 760 (1962). These constitutional provisions contain multiple protections relevant to the adequacy of the grand jury indictment. *First*, the Fifth Amendment confers the right to grand jury indictment: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment of indictment of a Grand Jury . . ..'" U.S. CONST. amend. V. Under this provision, a grand jury indictment must be specific enough to ensure that any conviction is based on the same facts found by the grand jury. *Id.* at 770. *Second*, the Fifth Amendment protects defendants from double jeopardy and contains the right to due process. *Third*, the Sixth Amendment provides that criminal defendants are entitled "to be informed of the nature and cause of the accusation." U.S. CONST. amend. VI.

The Supreme Court has "indicate[d] that an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974) (citing *Hagner v. United States*, 285 U.S. 427 (1932); *United States v. Debrow*, 346 U.S. 374 (1953)). An indictment is inadequate if it is not "'accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description [contained in the language of the statute], with which he is charged.'" *Id.* (quoting *United States v. Hess*, 124 U.S. 483, 487 (1888)).

4

In *Russell*, for example, the Supreme Court overturned the convictions of six petitioners who had been charged with "refusing to answer certain questions when summoned before a congressional subcommittee" under 2 U.S.C. § 192. *Russell*, 369 U.S. at 752. "In each case the indictment returned by the grand jury failed to identify the subject under congressional subcommittee inquiry at the time the witness was interrogated," instead "stating only that the questions to which answers were refused 'were pertinent to the question then under inquiry' by the subcommittee." The Supreme Court held that the indictment was defective on notice grounds, finding that "[w]here guilt depends so crucially upon such a specific identification of fact, our cases have uniformly held that an indictment must do more than simply repeat the language of the criminal statute." *Id.* at 764.[2]

In *Russell*, the Supreme Court emphasized that it had regularly found indictments that used the language of the statute but failed to provide sufficient particulars deficient. *Id.* at 765 (citing *United States v. Cruikshank*, 92 U.S. 542, 558 (1875) ("It is an elementary principle of criminal pleading, that where the definition of an offence . . . includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition . . . it must descend to particulars."); *United States v. Simmons*, 96 U.S. 360, 362 (1877) ("An indictment not framed to apprise the defendant 'with reasonable certainty, of the nature of the accusation against him . . . is defective, although it may follow the language of the statute."); *Hess*, 124 U.S. at 487 ("Undoubtedly, the language of the statute may be used in the general description of an offense, *but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense*, coming under the general description, with which he is charged . . . .") (emphasis added)).

---

[2] The Court found this even though "the indictments set out not only the times and places of the hearings at which the petitioners refused to testify, but also specified the precise questions which they then and there refused to answer[.]" *Id.* at 764. Because of those details, however, the Supreme Court disagreed that the indictment was insufficient for double jeopardy purposes.

5

In *Cruikshank*, the Supreme Court noted that in addition to providing the defendant with adequate notice and the detail necessary to plead double jeopardy, an indictment must "inform the court of the *facts* alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had." 92 U.S. at 558. Consequently, "*facts* are to be stated, not conclusions alone. A crime is made up of acts and intent; and these must be set forth in the indictment, with *reasonable particularity of time, place, and circumstances*." *Id.* (emphasis added). By way of example, the *Cruikshank* Court noted that a theft indictment "would be bad that did not specify with some degree of certainty the articles stolen." *Id.*; *see also United States v. Brandon*, 298 F.3d 307, 310 (4th Cir. 2002) ("[S]imply parroting the language of the statute in the indictment is insufficient . . . .. the indictment must also contain a 'statement of the essential facts constituting the offense charged.'") (quoting FED. R. CRIM. P. 7(c)(1)).

Consistent with this well-established case law, the Federal Rules of Criminal Procedure require that an indictment "be a plain, concise, and definite written statement of the *essential facts* constituting the offense charged . . . .." FED. R. CRIM. P. 7(c)(1) (emphasis added). The Supreme Court has observed that Rule 7(c) did not replace or diminish the constitutional requirements discussed above. Rather, "these basic principles of fundamental fairness retain their full vitality under modern concepts of pleading, and specifically under Rule 7(c) of the Federal Rules of Criminal Procedure . . . .." *Russell*, 369 U.S. at 765–66.

## 2. **Neither Discovery nor a Bill of Particulars Can Save an Invalid Indictment.**

"It is a settled rule that a bill of particulars cannot save an invalid indictment." *Russell v. United States*, 369 U.S. 749, 770 (1962). This is because while a bill of particulars could cure a notice problem, it does not address the defendant's right to grand jury indictment:

> To allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure. For a defendant could then

6

>be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him.

*Id.*; *see also United States v. Cecil*, 608 F.2d 1294, 1296 (9th Cir. 1979) (explaining that discovery and a bill of particulars cannot substitute for a valid indictment because "[t]he very purpose of the requirement that a man be indicted by a grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge.") (citing *Russell*, 369 U.S. at 771); *United States v. Tomasetta*, 429 F.2d 978 (1st Cir. 1970) ("The federal system views the grand jury as an important element of the criminal process. It, and it alone, is competent to charge an accused with a crime of this nature . . .."); *United States v. Hooker*, 841 F.2d 1225, 1226 (4th Cir. 1988) (holding that trial court erred in ruling that deficiency in indictment could have been cured by request for bill of particulars).

One example of these principles in action is the Ninth Circuit's opinion in *Cecil*, 608 F.2d 1294. In that case, the defendants were charged with one count of conspiracy to import marijuana and one count of conspiracy to distribute marijuana. The defendants filed "motions to dismiss based upon the indictment's insufficient factual precision." *Id.* at 1296. The trial court denied the motions, finding that a bill of particulars and discovery would remedy the lack of specificity. The Ninth Circuit disagreed. As a starting point, the court noted that there is an "established rule that a bill of particulars cannot save an invalid indictment." *Id.* (citing *Russell v. United States*, 369 U.S. 748 (1962)). This makes sense because while a bill of particulars might solve a notice problem and enable the defense to prepare for trial, allowing a bill of particulars to cure a vague indictment would eviscerate the constitutional grand jury guarantee:

>If a bill of particulars were allowed to save an insufficient indictment, the role of the grand jury as intervenor would be circumvented. Rather than the assurance that a body of fellow citizens had assessed the facts and determined that an individual should face prosecution, the prosecutor would be in a position to second guess what actually happened within the grand jury and fill in the gaps with what he assumed transpired. The protection of a significant check on the power of the courts and prosecutors would thus be lost. For similar reasons, "open file" discovery cannot cure an invalid indictment.

7

*Id.*

The *Cecil* court then proceeded to examine the indictment at issue, noting that the indictment must contain not only the elements, but also "a statement of the facts and circumstances that will inform the accused of the specific offense with which he is charged." *Id.* (citing *Hanling*, 418 U.S. at 117–118). The court observed that the indictment "state[d] that the conspiracies occurred in Arizona, Mexico, and elsewhere and offer[ed] the names of some of the alleged co-conspirators," but "fail[ed] to state any other facts or circumstances pertaining to the conspiracy or any overt acts done in furtherance thereof." *Id.* at 1297. "More importantly, the indictment fail[ed] to place the conspiracies within any time frame. The language 'beginning on or before July 1975, and continuing thereafter until on or after October 1975,' is open-ended in both directions." *Id.*

Because of the lack of specificity, the court found "that the indictment fail[ed] to allege sufficient facts to facilitate the proper preparation of a defense a*nd to ensure that the defendants were prosecuted on facts presented to the Grand Jury*." *Id.* (emphasis added). Referring to the grand jury requirement, the Ninth Circuit aptly reiterated the following concern:

> To allow a prosecutor or court to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection that the grand jury was designed to secure, because a defendant could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury that indicted him.

*Id.* (quoting *United States v. Keith*, 605 F.2d 462, 464 (9th Cir. 1979)).

Another example of these principles in action is provided by the First Circuit's reasoning in *Tomasetta*, 429 F.2d 978. In that case, a defendant charged with loan sharking challenged an indictment for, among other things, failing to name the victim. The First Circuit held "that the failure to name the victim, under the circumstances, was fatal," as the defendant was not provided with "sufficient information to identify that conduct which the grand jury has deemed adequate to

8

support an indictment[.]" *See id.* at 979. Looking at the charge as a whole, the court concluded that because of its the lack of specificity, the charge failed to provide either notice or assurance that the grand jury had found a particular offense.

>   Regarding the lack of notice, the Court wrote:
>
>   The defendant is accused of making threats by an unstated means to an unnamed person on a particular day in a city of moderate size. He is presumed to be innocent of the charge. Consider, then, the course a defense in such a case might take given adequate information. A defendant might seek to show that at the time in question he was not at the scene of the crime, in short, to establish an alibi. But unless the defendant can demonstrate that he was not in the city of Worcester during the entire day in question this is impossible, as the precise time and place are not specified.
>
>   Another course open in a case such as this would be to demonstrate that the conduct which allegedly amounted to the communication of threats never took place, that a communication did take place but conveyed no threat, or that the meaning of an ambiguous communication has been misconstrued by the grand jury. This would ordinarily be done by seeking the writing at issue or witnesses to the conversation or incident in question. Moreover, as the crime is essentially a speaking offense it would be critical for a defendant to fix in his mind the substance of any conversation in issue as soon as possible. However, where the location, time, and object of the communication are specified only in the most general terms or not at all, we cannot see how this manner of defense could be undertaken. In sum, this defendant could not possibly have made an adequate preparation for trial on the basis of the information contained in this indictment.

*Id.* at 979–80. And regarding the grand jury guarantee, the *Tomasetta* court expressed the same concerns as those in *Cecil*: "On an indictment as vague as that at bar, it is possible . . . to obtain a conviction based wholly on evidence of an incident completely divorced from that upon which the grand jury based its indictment. The prosecution may not have the power 'to roam at large' in this fashion." *Id.* at 980 (quoting *Russell*, 369 U.S. at 768–71).

In reaching this decision, the First Circuit emphasized that "no one factor is determinative." For example, "[t]he failure to specify with greater precision the location of the alleged offense would surely not have given rise to this result were sufficient additional facts averred." *Id.* at 980. Similarly, "even the failure to name the victim, as serious a handicap to the defense as that on occasion may be, might not alone have led to this result." *Id.* Looking at the charge as a whole,

9

however, the allegations were not sufficiently distinctive to identify the conduct for which the defendant was facing prosecution. *See id.* at 980–81.

### 3. Count Three and Violations One Through Five of Count One Are Constitutionally Deficient.

Count Three (the firearm charge) and the murder violations contained in Count One (the CCE count) are deficient because they (1) fail to provide Mr. Treviño with adequate notice so that he can prepare a defense, (2) are insufficient to allow Mr. Treviño to plead a double jeopardy bar in a subsequent proceeding, and (3) are too vague to ensure that any conviction would be based on the same facts found by the grand jury.

At the outset, the breadth and scope of the violations charged in Count One would be unacceptable in any murder prosecution and are no more constitutional simply because they are included within a CCE. The below chart demonstrates the vagueness of the murder allegations:

| Violation Number | When? | Where? | With Whom? | Who Was the Target? | Who Was Killed? |
|---|---|---|---|---|---|
| 1 | "In or about May 2008" | Extraterritorial jurisdiction of the US | Miguel Treviño Morales and "others, both known and unknown" | "members of the Mexican government, including public officials, law enforcement officers and members of the Military" | "one or more persons" |
| 2 | "Between on or about March 17, 2011, and March 20, 2011, both dates being approximate and inclusive" | Extraterritorial jurisdiction of the US | Miguel Treviño Morales and "others, both known and unknown" | "citizens of Mexico" | "one or more persons" |
| 3 | "From in or about January 2003, and continuing thereafter, up to an including the date of the filing of this Indictment, both dates being | Extraterritorial jurisdiction of the US | Miguel Treviño Morales and "others, both known and unknown" | "members and associates of Los Zetas and the Gulf Cartel" | "one or more persons" |

10

| Violation Number | When? | Where? | With Whom? | Who Was the Target? | Who Was Killed? |
|---|---|---|---|---|---|
| | approximate and inclusive" | | | | |
| 4 | "In or about May 2011" | Extraterritorial jurisdiction of the US | Miguel Treviño Morales and "others, both known and unknown" | "members of the Guatemalan government, including public officials, law enforcement officers and members of the Military" | "one or more persons" |
| 5 | "In or about March 2008" | Extraterritorial jurisdiction of the US | Miguel Treviño Morales and "others, both known and unknown" | "Guatemalan drug traffickers and other citizens of Guatemala" | "one or more persons" |

Doc. 578 at 5–7.

From a notice perspective, the charged violations are woefully insufficient. This is best demonstrated by how impossible it would be for Mr. Treviño to prepare to defend himself against the offenses. For example, Violation Three alleges that Mr. Treviño is guilty of a murder conspiracy that occurred over the course of more than twenty years and resulted in the deaths of some unknown number of members or associates of either Los Zetas or the Gulf Cartel. There is no specificity about whom he conspired with or where the murders occurred, or who are the victims, or the details of their death; in short, the indictment does not provide any detail about the time, mode and place of the murders. Under this charge, the government could show up to trial alleging the murder of John Doe in Colombia in January 2003, Jane Doe in Venezuela April 2018, Joan Doe in Mexico in December 2020, Jim Doe in Guatemala in June 2024, etc., and any one of these random allegations would fall under the broad scope of the charged violation.

Of course, the whole purpose of notice is to give the accused a sufficient opportunity to mount a defense. Defending a murder case is a complex task, and yet here, the government has not even told Mr. Treviño basic information such as whose deaths he participated in or in what countries those deaths occurred. Given the breadth of this charge, Mr. Treviño cannot conduct routine trial preparation tasks such as identifying and interviewing possible witnesses, examining

11

forensic evidence and determining whether he needs an independent expert, reviewing autopsies, determining where he was and what he was doing at the time of the alleged offense, identifying any search and seizure issues, or any of the other basic steps of a murder defense.

For similar reasons, these allegations are insufficient to (1) ensure Mr. Treviño could plead a double jeopardy bar to a subsequent indictment and (2) guarantee that any resulting conviction rests on the same facts found by the grand jury. To use the example mentioned above, the government could show up to trial on Violation Three and allege that Mr. Treviño conspired to kill John Doe in Colombia January 2003 and Jane Doe in Venezuela April 2018. There would no way to tell from the indictment if those were the same murders for which the grand jury found probable cause. Rather, the grand jury might have found probable cause to believe that Mr. Treviño conspired to kill Joan Doe in Mexico December 2020 and Jim Doe in Guatemala in June 2024. For the same reason, the violations are inadequate to protect Mr. Treviño against double jeopardy or to allow the Court to assess a motion to strike at the close of the government's case. *See Hamling*, 418 U.S. at 117; *Cruikshank*, 92 U.S. at 558. For example, if Mr. Treviño were acquitted at trial, nothing would stop the government from charging him with another murder conspiracy and claiming it is different from the ill-defined one charged in Violation Three.

Essentially, the government has failed to charge Mr. Treviño with any specific murder conspiracies. While Violation Three is the most extreme example because it spans more than twenty years, the other violations are also constitutionally insufficient. For example, Violation One alleges that in or around a specific month, Mr. Treviño participated in a murder conspiracy that resulted in the deaths of one or more Mexican government officials. The unnamed and unnumbered victims might be public officials, or in the military, or in Mexican law enforcement. The indictment does not tell us how many people died in the alleged murders, who they were, where the murders happened, how they happened, or who participated in then. Again, Mr. Treviño is unable to conduct basic trial preparation to defend himself against this charge.

Count Three is similarly deficient. Although Count Three charges use of a firearm during and in relation to a drug trafficking crime, it fails to allege any specific drug trafficking crime during and in relation to which the firearm was allegedly used. Moreover, Count Three provides a date range of January 2005 to the date of indictment, "both dates being approximate and inclusive," a range of nearly twenty years. The charge contains no other specifics. Just as with the murder violations, this accusation leaves Mr. Treviño unable to conduct trial preparation in his defense. In any 924(c) case, the defense must investigate basic issues such as the defendant's whereabouts at the time of the alleged use of the firearm, whether the defendant carried something that appeared to be a firearm, whether the item alleged to be a firearm legally qualified as a firearm, and whether the defendant committed a drug trafficking crime while using the firearm. Given the complete lack of specifics in Count Three, it is impossible for Mr. Treviño to conduct any of this investigation and preparation. Just as with the murder violations, the vagueness of Count Three would prevent Mr. Treviño from raising a double jeopardy bar to any subsequent prosecution or prevent this Court from ensuring that any conviction is based on the same facts found by the grand jury.

In sum, both Count Three and the charged murder violations in Count One are impermissibly vague and constitutionally insufficient. As a result, the indictment deprives Mr. Treviño of the notice necessary to prepare a defense to any of these allegations. Additionally, it would be impossible for the Court to evaluate at a motion to strike whether the government had proven facts sufficient under the law to carry its burden, since it is unclear what the government is alleging. And finally, regardless of whether Mr. Treviño is acquitted or convicted of these charges, he would be unable to raise that disposition as a double jeopardy bar to a subsequent prosecution for any specific murder conspiracy or use of a firearm.

These violations are a prime example of why the Fifth and Sixth Amendments require grand jury indictments to contain not only the language of the statute, but also facts and circumstances sufficient to fairly inform the accused of what, exactly, the allegation is. Currently,

13

Mr. Treviño has been informed only that he supposedly conspired with an unknown number of unnamed persons to kill other unnamed persons in unidentified places during broad periods of time, and that the deaths of an unidentified number of unnamed persons resulted. Meanwhile, he has been told only that he used a firearm in connection with some unnamed drug trafficking crime at some point in a nearly twenty-year span. There is no way to mount a defense to these vague charges, or to be legally protected from a subsequent prosecution by their outcome. Both Count Three and Violations One through Five of Count One must be dismissed as defective.

## CONCLUSION

WHEREFORE, Mr. Miguel Angel Treviño Morales respectfully moves this Court to dismiss Count Three and Violations One through Five of Count One of the Fifth Superseding Indictment.

Respectfully submitted,

/s/ *Michael McCrum*

| | |
|---|---|
| Michael McCrum | William B. Purpura, Esquire |
| McCrum Law Office | Purpura & Purpura |
| 1659 Tx-46 W, Ste. 115 | 606 Baltimore Ave. |
| PMB 487 | Suite 301 |
| New Braunfels, Tx. 78132 | Towson, Maryland 21204 |
| Office 210.225.2285 | Office 410-727-8550 |
| Tx Bar No. 13493200 | DC Fed Bar # MD00074 |
| michael@mccrumlegal.com | wpurpura@purpuralaw.com |

*Counsel for Miguel Angel Treviño Morales*

## CERTIFICATE OF SERVICE

I, Michael McCrum, hereby certify that on this January 15, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *Michael McCrum*

14