**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL NO. 08-CR-057 (TNM)** |
| **v.** | |
| **MIGUEL TREVINO MORALES,**<br>    **also known as "40," "Zeta 40,"**<br>    **"Cuarenta," "Z-40," and "Mike,"** | |
| **and** | |
| **OMAR TREVINO MORALES,**<br>    **also known as "42, and "Z-42,"** | |
| **Defendants.** | |

<u>**UNITED STATES' OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS (ECF**
**Nos. 778 & 779)**</u>

The United States respectfully submits this consolidated memorandum in opposition to the

motions to dismiss portions of Count One and all of Count Three of the Fifth Superseding

Indictment in the above-captioned case filed by the defendants Omar Trevino Morales (ECF No.

778) and Miguel Trevino Morales (ECF No. 779) (collectively, the "Motions").

**BACKGROUND**

Miguel Trevino Morales ("Miguel") and Omar Trevino Morales ("Omar") are leaders of a

violent international drug trafficking organization ("DTO") based in Mexico known at various

times as The Company, Los Zetas, and the Cartel del Noreste ("CDN"). By at least 2008, Miguel

had worked his way up to second in command of the Los Zetas. In that role, he was responsible

for trafficking enormous quantities of cocaine and marijuana to and from Mexico and into the

United States. He also directed—and personally inflicted—terroristic violence on civilian

populations, politicians, law enforcement, and other drug traffickers.  Miguel assumed leadership

of the cartel after the Los Zetas' leader was killed in 2012.  Miguel was arrested in 2013, but he

continued to direct the cartel's activities from Mexican prison.  Omar, who had until then been his

brother Miguel's close associate, assumed responsibility for the cartel's day-to-day leadership until

his own arrest in 2015.  Along with Miguel, he continued to direct the cartel's activities until their

expulsion from Mexico to the United States on February 27, 2025.

A grand jury sitting in this district returned an indictment against Miguel and several co-

conspirators on March 13, 2008, ECF No. 3, and returned a superseding indictment with charges

against Omar on June 9, 2009, ECF No. 6.  On August 20, 2024, a grand jury charged both Miguel

and Omar in a Fifth Superseding Indictment with (1) a continuing criminal enterprise ("CCE")

count under 21 U.S.C. § 848 (Count One); (2) a narcotics conspiracy count under 21 U.S.C. §§

959, 960 and 963 (Count Two); (3) a firearms count in violation of 18 U.S.C. § 924(c) (Count

Three); and (4) an international money laundering conspiracy count in violation of 18 U.S.C.

§ 1956(h) (Count Four).  ECF No. 578.  The Fifth Superseding Indictment (the "indictment") is

the current operative indictment, though as the Government indicated at the most recent status

conference, the Government intends to seek a Sixth Superseding Indictment before May 1, 2026.

## LEGAL STANDARD

"To be sufficient under the Constitution, an indictment need only inform the defendant of

the precise offense of which he is accused so that he may prepare his defense and plead double

jeopardy in any further prosecution for the same offense."  *United States v. Williamson*, 903 F.3d

124, 130 (D.C. Cir. 2018) (quotation marks omitted).  This constitutional requirement is

"effectuate[d]" by Federal Rule of Criminal Procedure 7(c)(1), *id.*, which requires that an

indictment contain only a "plain, concise, and definite written statement of the essential facts

constituting the offense charged." Fed. R. Crim. P. 7(c)(1). "Detailed allegations . . . are not contemplated by Rule 7(c)(1)," and "an indictment parroting the language of a federal criminal statute is often sufficient," *United States v. Resendiz-Ponce*, 549 U.S. 102, 109-110 (2007).

"When determining the sufficiency of an indictment, courts 'look at the contents of the subject indictment on a practical basis and in its entirety, rather than in a hypertechnical manner.'" *United States v. Venkata*, 596 F. Supp. 3d 58, 62 (D.D.C. 2022) (cleaned up) (quoting *United States v. McLeczynsky*, 296 F.3d 634, 636 (7th Cir. 2002)). "The sufficiency of [an] indictment is not a question of whether it could have been more definite and certain." *United States v. Debrow*, 346 U.S. 374, 378 (1953). Because dismissal "directly encroaches upon the fundamental role of the grand jury," it is granted "only in unusual circumstances." *United States v. Ballestas*, 795 F.3d 138, 148 (D.C. Cir. 2015) (citation modified). After all, "[i]f the defendants want[] more definite information," they can request a bill of particulars. *Debrow*, 346 U.S. at 378; *see United States v. Mejia*, 448 F.3d 436, 445 (D.C. Cir. 2006) ("A bill of particulars can be used to ensure that the charges brought against a defendant are stated with enough precision to allow the defendant to understand the charges, to prepare a defense, and perhaps also to be protected against retrial on the same charges").

## ARGUMENT

The Motions are premature and may soon be moot, as the Government intends to seek a superseding indictment before May 1, 2026. The Court should therefore consider holding in abeyance any ruling on the Motions unless and until the Government fails to obtain such a superseding indictment. If the Court does address the Motions now, it should deny them. The operative Fifth Superseding Indictment adequately pleads a firearms charge under 18 U.S.C. § 924(c) in Count Three and murder violations as part of the CCE charge under Count One.

## I.    THE MOTIONS TO DISMISS ARE PREMATURE

As the Government informed the Court at the October 14, 2025, status conference, the Government intends to seek a superseding indictment.  Though the operative indictment's allegations are legally sufficient (*see infra,* Section II), the Government anticipates that a future indictment will contain at least some of the additional factual detail that the defendants claim is missing from the current indictment.[1]

There is therefore little reason for the Court to now adjudicate the sufficiency of the current indictment's allegations: the anticipated superseding indictment will moot any challenge as to the specificity of allegations in the current indictment.  *See, e.g.*, *United States v. Robertson*, 588 F. Supp. 3d 114, 119 (D.D.C. 2022); *United States v. Sargent*, No. 21-CR-00258 (TFH), 2022 WL 1124817, at *1 (D.D.C. Apr. 14, 2022).  Moreover, even if the defendants were successful in dismissing the current indictment before the return of the new indictment, such dismissal would still not prevent the Government from seeking the new indictment.  *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, 1A FED. PRAC. & PROC. CRIM. § 195 (5th ed.) (citing authorities).  Indeed, Federal Rule of Procedure 12(g) contemplates that "[i]f the court grants a motion to dismiss based on a defect . . . in the indictment," it may order that a defendant remain detained "for a specified time until a new indictment . . . is filed."  Fed. R. Crim. P. 12(g).

For these reasons, it would not be an efficient use of the Court's resources to address the Motions now when some or all their arguments will be moot if the grand jury returns the superseding indictment the Government intends to seek.  The Court should therefore hold in

---

[1] The defense did not alert the Government to their intention to file these Motions in advance of filing them.  If they had done so, the Government would have informed them that the anticipated superseding indictment would include some or all the factual detail that they claim is lacking.

abeyance any ruling on the defendants' Motions unless and until the Government fails to obtain a superseding indictment before the next scheduled status conference.

## II.    THE ALLEGATIONS IN THE CURRENT INDICTMENT ARE SUFFICIENTLY SPECIFIC

If the Court does address the defendants' Motions, it should deny them.  Both Count Three and the murder violations of Count One of the Fifth Superseding Indictment contain sufficient detail to inform the defendants of the offenses with which they are charged and to provide Double Jeopardy protection from a future prosecution.

### A.  COUNT THREE IS ADEQUATELY PLED

Count Three charges a violation of 18 U.S.C. § 924(c), which provides enhanced penalties for the use of a firearm "in relation to" a drug trafficking crime.  18 U.S.C. § 924(c)(1)(A).[2]  *See* ECF No. 578 ¶¶ 29-31.  Here, Count Two of the Fifth Superseding Indictment alleges such a drug trafficking crime, specifically, an international narcotics conspiracy in violation of 21 U.S.C. §§ 959, 960 and 963.  ECF No. 578 ¶¶ 32-33.  The Fifth Superseding Indictment makes the two charges' relationship amply clear: Count Three specifically alleges that the defendants committed the § 924(c) violation "in relation to . . . the crimes charged in Count Two."  ECF No. 578 ¶ 33.  To prove these charges, the Government intends to put on evidence that the defendants engaged in a narcotics conspiracy for more than twenty years and that they and their co-conspirators possessed, carried and used firearms for nearly the entire time that they did so.[3]

---

[2] Section 924(c) provides for several mandatory minimum sentences, which depend on the nature of the firearm, how it was used, and the defendant's criminal history.  *See* 18 U.S.C. § 924(c)(1)(A)-(C).  As relevant here, the statute provides, among other things, a thirty-year mandatory minimum if a defendant possesses "a machinegun or a destructive device, or [a firearm] equipped with a firearm silencer or firearm muffler."  18 U.S.C. § 924(c)(1)(C)(ii).

[3] "A conviction under 18 U.S.C. § 924(c) may be premised on either an aiding-and-abetting or *Pinkerton* theory of liability."  *United States v. McGill*, 815 F.3d 846, 944 (D.C. Cir. 2016).

The indictment pleads Counts Two and Three exactly as the D.C. Circuit's case law instructs. A narcotics conspiracy, such as that charged in Count Two, is an appropriate predicate for a § 924(c) charge, such as that charged in Count One. *See e.g.*, *United States v. Anderson*, 59 F.3d 1323, 1334 (D.C. Cir. 1995) (en banc) (affirming § 924(c) conviction predicated on narcotics conspiracy); *United States v. Meggett*, 875 F.2d 24, 27 (2d Cir. 1989) (holding that narcotics conspiracy may serve as predicate for § 924(c)). Further, the D.C. Circuit has held that "only one § 924(c)(1) violation may be charged in relation to one predicate crime," *Anderson*, 59 F.3d at 1334, or, put differently, that the "unit of prosecution" under § 924(c)(1) is the underlying drug trafficking crime, *see id.* at 1333-34. Thus, the Court of Appeals rejected arguments that "each separate display of a gun," or "each day a gun was carried" is a "separate § 924(c)(1) violation." *Id.* at 1332. If it were otherwise, the Court of Appeals explained, "it could and would be expected that the government would charge multiple violations of § 924(c)(1) with respect to almost any . . . drug trafficking crime," which would allow "a *de facto* life imprisonment penalty in many routine drug cases." *Id.* at 1332-33.

Nonetheless, the defendants argue that Count Three must be dismissed because it leaves them "unable to conduct trial preparation in [their] defense." ECF No. 778 at 13; ECF No. 779 at 13. They demand to know, among other things, "the specific drug trafficking crime during and in relation to which the firearm was allegedly used" and the defendants' alleged "whereabouts at the time of the alleged use of the firearm." ECF No. 778 at 13-14; ECF No. 779 at 13. But the Fifth Superseding Indictment already tells the defendants the specific drug trafficking crime during and in relation to which the firearm was used: Count Two. The defendants' demand to know their alleged whereabouts at the time of the use of the firearm misunderstands the nature of a § 924(c) charge. As the Court of Appeals made clear in *Anderson*, each specific use of a firearm is not a

separate § 924(c) violation.  Instead, the indictment charges the § 924(c) count exactly as the Court of Appeals' caselaw instructs—with one § 924(c) charge (Count Three) corresponding to the one narcotics conspiracy charge (Count Two).  Further, Count Two provides general detail as to when and where the offenses were committed: namely, Mexico, the United States and elsewhere from on or about January 2005 to the date of the filing of Fifth Superseding Indictment.  *See* ECF No. 578 ¶¶ 30, 33; s*ee, e.g.*, *United States v. Apodaca*, 275 F. Supp. 3d 123, 154 (D.D.C. 2017) (approving similarly pled § 924(c) charge).  Further specificity is neither practical nor required.

### B.  THE MURDER VIOLATIONS OF COUNT ONE ARE ADEQUATELY PLED

The defendants' challenges to the five murder violations charged as part of Count One are likewise meritless.

Count One of the Fifth Superseding Indictment charges a Continuing Criminal Enterprise offense under 21 U.S.C. § 848.  The CCE statute provides enhanced criminal penalties for a person who (1) engages in a "continuing series of [narcotics] violations"; (2) does so "in concert with five or more other persons with respect to whom such person occupies a position . . . of management"; and (3) "obtains substantial income or resources" from such violations.  21 U.S.C. § 848(c).  The underlying predicate violations may consist of "any drug violation that is a felony."  *United States v. Smith*, 104 F.4th 314, 332 (D.C. Cir. 2024); 21 U.S.C. § 848(c)(1).  A "series" of violations means "three or more" violations.  *United States v. Harris*, 959 F.2d 246, 252 (D.C. Cir. 1992); *United States v. Moore*, 651 F.3d 30, 80 (D.C. Cir. 2011).  The CCE statute also makes it an offense, and a predicate violation, to kill or cause the killing of others in furtherance of the criminal enterprise or while engaged in a drug trafficking offense.  *See* 21 U.S.C. § 848(e)(1)(A); *United States v. Tipton*, 90 F.3d 861, 884 (4th Cir. 1996); *United States v. Smith*, No. CR 95-154-8 (BAH),

2022 WL 10449599, at *10 (D.D.C. Oct. 17, 2022), *aff'd* 104 F.4th 314 (D.C. Cir. 2024). Here, Count One alleges nineteen predicate violations, the first five of which are murder violations.

The indictment adequately pleads the five murder violations under the CCE count.[4] For each such violation, the CCE count identifies the class of victims and, with one exception, an approximate date range of the killings. For example, violation 1 alleges that "in or about May 2008," the defendants killed or caused the killing "members of the Mexican government, including public officials, law enforcement officers and members of the Military."[5] ECF No. 578 ¶ 11. Violation 2 alleges that "between on or about March 17, 2011, and March 20, 2011," the defendants killed or caused the killing of "citizens of Mexico."[6] *Id.* ¶ 12. Violation 3 alleges that "from in or about January 2003, and continuing thereafter up to and including the date of the filing of this Indictment," the defendants killed or caused the killing of "members and associates of Los Zetas

---

[4] In addition to the murders pled under Count One, the Government also intends to introduce evidence that the defendants killed or directed the killing of several hundred individuals in furtherance of their drug trafficking conspiracy, and that the defendants boasted to others about how many people they had killed. As the indictment alleges, the Zetas "use[d] terroristic violence to control large swaths of Northern Mexico" and "carried out numerous acts of violence, including murders, assaults, kidnappings, assassination and acts of torture." ECF No. 578 ¶¶ 1, 7. The evidence of these other murders is admissible, intrinsic evidence of the drug trafficking conspiracy in Count Two. *See, e.g., United States v. Davis*, 235 F. App'x 747, 749 (D.C. Cir. 2007) (affirming admission of uncharged murders as "intrinsic" to the charged narcotics conspiracy); *United States v. Machado-Erazo, 47 F.4th 721, 729* (D.C. Cir. 2018) (same).

[5] This violation relates to the murder of Francisco Javier Hernandez Zamorano, who was a law enforcement official in Mexico's Agencia Federal de Investigaciones. The defendants and their conspirators kidnapped Zamorano, tortured him, murdered him and then left his body in a soccer stadium.

[6] This violation relates to the defendants' murder of dozens of individuals in and around the towns of Allende and Piedras Negras in Coahuila, Mexico. The victims included cartel members whom the defendants suspected of providing information to U.S. law enforcement, their family members, and other innocent civilians. This violation is further described in paragraph 7 of indictment. *See* ECF No. 578 at ¶ 7 (alleging that "MIGUEL TREVINO MORALES and OMAR TREVINO MORALES executed dozens of residents living around Allende, a small town located in Coahuila, Mexico, in approximately March 2011").

and the Gulf Cartel."[7]  *Id.* ¶ 13.  Violation 4 alleges that "on or about May 2011," the defendants killed or caused the killing of "members of the Guatemalan government, including public officials, law enforcement officers and members of the military."  *Id.* ¶ 14.[8]  Violation 5 alleges that "in or about March 2008," the defendants killed or caused the killings of "Guatemalan drug traffickers and other citizens of Guatemala."  *Id.* ¶ 15.[9]

These allegations described above are sufficient for the defendants to "prepare [their] defense and plead double jeopardy in any further prosecution for the same offense."  *Williamson*, 903 F.3d at 130.  They describe the persons whom the defendants killed and, with one exception (*see* note 7, *supra*), provide an approximate date for the killing(s).

The defendants complain that the indictment does not specifically name the victims, but there is no requirement that an indictment identify victims by name.  Instead, the names of victims are routinely sought via a request for a bill of particulars.  *See United States v. Raymond*, No. CR 21-380 (CKK), 2023 WL 6294178, at *2 (D.D.C. Sept. 27, 2023) (seeking bill of particulars to obtain victim's identities); *United States v. Connell*, No. CR 21-0084 (PLF), 2023 WL 4286191, at *3 (D.D.C. June 30, 2023) (same).  Their absence is not a proper basis to dismiss an indictment. Indeed, the Eighth Circuit has suggested that an indictment that (like the one in this case) identifies victims "as a collective body, not by individual names" provides, "greater protection against subsequent prosecutions than would an indictment which merely named some of the [victims]." *United States v. Gay*, 577 F.2d 465, 466 (8th Cir. 1978).  That is because a conviction on such an

---

[7] This violation concerns in particular the killing of the cartel member who used the name "Avisba" in or around the Spring of 2011.  The Government anticipates that a superseding indictment may revise this violation, among other things, to contain a narrower time range.

[8] This violation concerns the murder of Guatemalan prosecutor Allan Stowlinsky Vidaurre.

[9] This violation concerns the killing of Juan Jose Leon Ardon and his associates in Zacapa, Guatemala.

indictment "would appear to . . . bar[]" any "subsequent prosecution for assaulting any member of that group or class." *Id.*; *see id.* (rejecting challenge to indictment that identified the victims only as "campers"); *cf. e.g.*, ECF No. 578 ¶ 11 (alleging killing of "members of Mexican government"); ECF No. 578 ¶ 12 ("citizens of Mexico").

The cases the defendants rely on to argue that violations 1 through 5 must be dismissed miss the mark. This is not a case where the indictment fails to allege the very "core of criminality" upon which "guilt depends so crucially." *Russell v. United States*, 369 U.S. 749, 752 (1962). In *Russell*, the defendants were charged with violations of 2 U.S.C. § 292, which prohibits refusing "to answer any question pertinent to the subject under inquiry." 2 U.S.C. § 292. The Supreme Court explained that because "the very core of criminality" under that statute is "pertinency to the question under inquiry," an indictment must allege the question under inquiry. *Russell*, 369 U.S. at 752. That is not true of the details that the defendants claim the Fifth Superseding Indictment is lacking: a killing in furtherance of a drug trafficking conspiracy is illegal, regardless of the precise dates, locations, and identities of the victims. Guilt does not "depend[] so crucially" on these facts. *Russell*, 369 U.S. at 752. *See Williamson*, 903 F.3d 124, 131 (D.C. Cir. 2018) (distinguishing *Russell*, holding that the specific information the defendant sought was not "central to every prosecution under the statute" or "the very core of criminality under the statute" and thus did not need to be provided); *see also Hamling v. United States*, 418 U.S. 87, 118 (1974) (similarly distinguishing *Russell* in an obscenity prosecution).

Nor is this a case where the indictment fails to set forth all the elements necessary to constitute the charged offense such that the defendants do not have adequate notice of the charges against them and cannot later avoid double jeopardy. As the defendants themselves recognize, "[i]t is generally sufficient that an indictment set forth the offense in the words of the statute itself,

10

as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." ECF No. 778 at 4-5 (quoting *Hamling*, 418 U.S. at 117 (quotation marks omitted)). The Fifth Superseding Indictment satisfies that standard.

The defendants rely on *United States v. Cruickshank*, 92 U.S. 542 (1875), which observed an indictment should set forth with "reasonable particularity of time, place and circumstance" the offenses charged, to argue otherwise. *Id.* at 558; *see* ECF No. 778 at 5-6 (discussing *Cruickshank*). But, first, that case was decided well before the adoption of the Federal Rules, which "were designed to eliminate technicalities in criminal pleadings." *Resendiz-Ponce*, 549 U.S. at 110; *cf. id.* (noting that "detailed allegations might well have been required under common-law pleading rules"). And, second, the Fifth Superseding Indictment does provide reasonable particularity of time, place and circumstance. It begins with several introductory paragraphs explaining the background of the cartel, the cartel's use of terroristic violence to control large swaths of Northern Mexico, and the defendants' roles in the cartel. *See* ECF No. 578 ¶¶ 1-8. Then, as described above, it provides descriptions of the murder victims alleged under Count One and the approximate dates of the killings. Thus, the indictment does far more than "simply parrot[] the language of the statute," ECF No. 778 at 6 (quoting *United States v. Brandon*, 298 F.3d 307, 310 (4th Cir. 2002))— even though, as the Supreme Court has explained, doing so "is often sufficient," *Resendiz-Ponce*, 549 U.S. at 110.

The defendants cite their remaining cases for the proposition that "neither discovery nor a bill of particulars can save an invalid indictment." ECF No. 778 at 7 (cleaned up); *see id.* at 6-10 (citing *United States v. Cecil*, 608 F.2d 1294, 1297 (9th Cir. 1979), *United States v. Tomasetta*, 429 F.2d 978 (1st Cir. 1970) and *United States v. Hooker*, 841 F.2d 1225 (4th Cir. 1988)). The

indictment here, however, is not invalid, and is not therefore in need of saving. To the extent that the defendants seek additional detail about the allegations and charges in the indictment, discovery in this case may very well provide it, or they can seek a bill of particulars.

## CONCLUSION

For the foregoing reasons, the Court should deny the Motions, if it chooses to address them before the return of a superseding indictment.

Respectfully submitted,

MARGARET A. MOESER
Chief
Money Laundering, Narcotics
and Forfeiture Section Criminal Division
U.S. Department of Justice

By:        /s/ D. Hunter Smith
KIRK HANDRICH
D. HUNTER SMITH
JAYCE BORN
Trial Attorneys
Money Laundering, Narcotics
and Forfeiture Section
Criminal Division
U.S. Department of Justice