# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL NO. 08-CR-057 (TNM)** |
| **v.** | |
| **MIGUEL TREVINO MORALES,**<br>  also known as "40," "Zeta 40,"<br>  "Cuarenta," "Z-40," and "Mike,"** | |
| **and** | |
| **OMAR TREVINO MORALES,**<br>  also known as "42, and "Z-42,"** | |
| **Defendants.** | |

## UNITED STATES' OPPOSITION TO DEFENDANTS' MOTIONS TO COMPEL DISCLOSURE OF SPECIFIC INFORMATION

The United States respectfully submits this motion in opposition to the Motions to Compel Disclosure of Specific Information ("Motions") filed by the defendants Miguel Trevino Morales and Omar Trevino Morales ("the Defendants") (ECF Nos. 797 & 800, respectively).[1]  The Motions seek an order compelling the production of certain communications between representatives of Mexico and the United States as well as internal U.S. government documents concerning the transfer of the defendants from Mexico to the United States, including documents possessed by various offices in the Department of Justice, the Department of State and "the White House."  Mot. 1-2.

---

[1] The Motions are identical in almost all respects (albeit with different pagination).  This opposition cites to ECF No. 797 ("Mot."), but such citations should be construed as also referring to the identical passages in ECF No. 800.

The Motions should be denied for two independent reasons: (1) the documents and information they seek are neither exculpatory nor material to preparing the defense and are thus not discoverable under *Brady v. Maryland*, 373 U.S. 83 (1963), Federal Rule of Criminal Procedure 16(a)(1)(E)(i), or any other rule of discovery, and (2) the requested information and documents are not within the possession, custody or control of the prosecution team.

## BACKGROUND

Defendants Miguel Trevino Morales ("Miguel") and Omar Trevino Morales ("Omar") were leaders of a violent and prolific drug trafficking organization based in Mexico known as "Los Zetas," later renamed the "Cartel del Noreste." Miguel was charged by a grand jury in this district in an indictment returned on March 13, 2008, ECF No. 3, and Omar was charged in a superseding indictment returned on June 9, 2009, ECF No. 6. Further superseding indictments against both Miguel and Omar were returned on November 4, 2010 (Second Superseding Indictment), September 6, 2012 (Third Superseding Indictment), and May 9, 2013 (Fourth Superseding Indictment). *See* ECF Nos. 27, 61, 159. These indictments were each the product of an investigation led by the Narcotic and Dangerous Drug Section[2] (NDDS) of the Department of Justice's Criminal Division and the Houston, Texas, Division of the Drug Enforcement Administration.

After the return of the indictments in this district, the United States requested that the Government of Mexico arrest Miguel and Omar pursuant to provisional arrest warrants.[3] Both

---

[2] In October 2025, the Narcotic and Dangerous Drug Section merged with another Criminal Division section, which are now known as the Money Laundering, Narcotics and Forfeiture Section.

[3] A provisional arrest is an arrest requested by another country before the transmission of a formal extradition package. *See, e.g.*, United States-Mexico Extradition Treaty, art 10, May 4, 1979, 31 U.S.T. 5067 (ECF No. 797-2 at 5).

Miguel and Omar were also wanted in Mexico on Mexican charges. On or around July 15, 2013, Mexican authorities arrested Miguel. On or around December 30, 2013, the United States presented a formal request for his extradition based on the Fourth Superseding Indictment. In or around March 2015, Mexican authorities arrested Omar and, on or around September 14, 2015, the United States presented a formal request for his extradition based on the Fourth Superseding Indictment.

Since the first indictment in this case, grand juries in several other districts also returned indictments against Miguel and Omar based on investigations led by several U.S. Attorney's Offices. These include indictments by the U.S. Attorney's Offices for the Eastern District of New York (EDNY),[4] the Western District of Texas (WDTX),[5] the Eastern District of Texas (EDTX),[6] and the Southern District of Texas (SDTX).[7] In 2024, while the United States' request for extradition of Miguel and Omar on the Fourth Superseding Indictment was pending, NDDS partnered with the U.S. Attorney's Offices in two of these districts—EDNY and WDTX—to seek a Fifth Superseding Indictment, which a grand jury in this district returned on August 20, 2024. *See* ECF No. 578.[8]

---

[4] *See* Indictment, *United States v. Miguel Angel Trevino Morales*, No. 09-cr-407 (E.D.N.Y. 2009) (Miguel); Superseding Indictment, *United States v. Miguel Angel Trevino Morales*, No. 09-CR-407 (E.D.N.Y. 2014) (Miguel).

[5] *See* Indictment, *United States v. Miguel Angel Trevino Morales*, No. 1:12-cr-00210-SS (W.D.T.X. 2012) (Miguel and Omar).

[6] *See* Indictment, *United States v. Miguel Trevino*, No. 4:12-cr-00019 (E.D.T.X. 2012) (Miguel and Omar).

[7] *See* Indictment, *United States v. Miguel Angel Trevino-Morales*, No. 5:08-cr-244 (S.D.T.X. 2008) (Miguel and Omar); Superseding Indictment, *United States v. Miguel Morales-Garcia*, No. 4:10-cr-148 (S.D.T.X. 2010) (Miguel).

[8] The same Offices that sought the Fifth Superseding Indictment (WDTX, EDNY, and MNF (then NDDS)), joined by SDTX, anticipate seeking a Sixth Superseding Indictment before the May 1, 2026, status conference. For purposes of this motion, the government submits that the prosecution

On or around February 27, 2025, Mexican authorities transported Miguel and Omar to Washington Dulles International Airport, where Drug Enforcement Administration agents arrested them. *See* Mot. 8 (stating that the "defendant was transported to the United States by the Mexican military"). As the defendants correctly observe, Mexican authorities' transfer of the defendants to the United States was not an extradition. *See* Mot. 7-8; *accord* Mot. 15 (quoting statement of Mexican Attorney General that "[n]o extradition law is being applied"). Instead, the government understands that the Mexican government expelled the defendants from Mexico pursuant to Mexican domestic legal authorities permitting such action to protect national security. *See* ECF No. 797-5 at 2 (statement of Mexican Attorney General that Article 5 of the Mexican National Security Law "establishes all the necessary provisions to act as we are acting.").[9]

The defendants were arraigned before this Court on March 14, 2025, and pled not guilty.

On June 9, 2025, Miguel filed a discovery request under Rule 16 asking for, among other things:

> all documents that relate to the circumstances which gave rise to the expulsion of Mr. Treviño Morales from Mexico to the United States, to include communications between representatives of the two governments and internal documents within United States government agencies and offices, to include the Departments of Justice and State and the White House.

*Id.* The government responded to this request on July 23, 2025, and explained that the prosecution team did not have any such documents in its possession, custody or control, and that even if it did,

---

team on the present case includes the lawyers and agents who participated in the investigations and prosecutions led by NDDS, EDNY, WDTX and SDTX.

[9] According to documents submitted by the defendants, the Mexican Minister of Security and Civilian Protection stated that Mexican judges had postponed the extradition of Miguel 79 times and that of Omar 54 times. *See* ECF No. 797-5 at 2. Witnesses have informed the government that Miguel and Omar's representatives paid bribes to delay the extraditions. According to the same documents, the Minister also stated that Miguel and Omar were "responsible for the homicide of 17 public servants who worked in the custody of federal penitentiary centers and constantly threatened and intimidated personnel." *Id.*

such documents would not be discoverable under either Rule 16 or *Brady*.  *See* Ex. A.  Nearly eight months later, the defendants filed the present motions to compel.

## LEGAL STANDARD

"In criminal prosecutions, the government must comply with two related discovery obligations."  *United States v. Biaou*, No. 24-CR-323 (CRC), 2026 WL 221768, at *10 (D.D.C. Jan. 28, 2026) (citation modified).

"First, the government has a 'duty to search' possible sources of *Brady* information."  *Id.* (quoting *United States v. Brooks*, 966 F.2d 1500, 1502 (D.C. Cir. 1992).  *Brady* information is information that is "material either to guilt or punishment" and is "favorable to the accused."  *Brady*, 373 U.S. at 87.  Because "[o]nly material that is *exculpatory* is covered under *Brady*," information that "would only support jurisdictional challenges" or "other collateral attacks on the indictment" is not subject to disclosure under *Brady*.  *United States v. Blackley*, 986 F. Supp. 600, 603 (D.D.C. 1997) (emphasis in original).  Instead, to be subject to a *Brady* obligation, information must "tend to show freedom from fault, guilt or blame."  *Id.*

Second, under Federal Rule of Criminal Procedure 16, the government must permit the defense to copy and inspect "books, papers, documents, data, photographs, tangible objects, buildings or places" that are "material to preparing the defense."  Fed. R. Crim. P. 16(a)(1)(E)(i).  Evidence is material to preparing the defense when "there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal."  *United States v. Marshall*, 132 F.3d 63, 68 (D.C. Cir. 1998) (quoting *United States v. Lloyd*, 992 F.3d 348, 351 (D.C. Cir. 1993)).  Materiality is a higher standard than relevance, *cf.* Fed. R. Civ. P. 26(b)(1), and "[a]t least one of the rationales behind the materiality requirement (and limiting discovery by criminal defendants generally) is to

insure that the government not expend excessive time and effort securing documents for the defendant," *United States v. Apodaca*, 287 F. Supp. 3d 21, 39 (D.D.C. 2017) (quoting *United States v. George*, 786 F. Supp. 11, 14 (D.D.C. 1991)).  Further, regardless of their materiality, "reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case" are exempt from discovery under Rule 16(a)(1)(E).  Fed. R. Crim. P. 16(a)(2).

In determining which files a prosecutor must search for discoverable information, "[c]ourts in this district apply the same . . . standard under both *Brady* and Rule 16."  *Biaou*, 2026 WL 221768, at *10.  Specifically, the duty to search "is limited to files maintained by branches of government 'closely aligned with the prosecution.'"  *Id.* (quoting *Brooks*, 966 F.2d at 1502); *cf.* Fed. R. Crim. P. 16(a)(1)(E) (requiring disclosure only of documents "within the government's possession, custody, or control").  This prosecution team inquiry is fact intensive and requires a case-by-case analysis, with courts looking to "whether the individual actively investigates the case, acts under the direction of the prosecutor, or aids the prosecution in crafting trial strategy." *United States v. Meregildo*, 920 F. Supp. 2d 434, 441-42 (S.D.N.Y. 2013), *aff'd sub nom. United States v. Pierce*, 785 F.3d 832 (2d Cir. 2015); *see also*, *e.g.*, *Moon v. Head*, 285 F.3d 1301, 1310 (11th Cir. 2002) (noting that members of a "prosecution team" will typically share "resources or labor" and "work together to investigate"); *Biaou*, 2026 WL 221768, at *10 (evaluating the extent of cooperation with the prosecution in gathering evidence for the case and the nature and extent of the working relationship with the prosecution).

Whether an individual is part of the prosecution team—and thus information and documents known or available to him or her are discoverable—"focuses on the specific circumstances of [the person's] involvement" in the prosecution, not their "status . . . such as a law

enforcement officer, prosecutor, or other government official." *United States v. Sheppard*, No. CR 21-203 (JDB), 2022 WL 17978837, at *11 (D.D.C. Dec. 28, 2022) (citation modified). Thus, courts do not consider entire agencies as "'monolith[s],' and . . . will deem only certain personnel [within a given agency] as closely aligned with the prosecution, and only some of their files as within the prosecution's constructive control." *United States v. Trump*, 753 F. Supp. 3d 17, 44 (D.D.C. 2024). For that reason, it is often the case that even information known "to investigators drawn from the same agency as members of the prosecution team" is not considered to be within the custody or control of the prosecution team. *United States v. Pelullo*, 399 F.3d 197, 218 (3d Cir. 2005); *see e.g.*, *id.* at 217-18 (holding some Department of Labor employees were part of prosecution team, but not others); *United States v. Quinn,* 445 F.2d 940, 944 (2d Cir. 1971) (refusing to impute knowledge of Florida AUSA to a New York AUSA); *United States v. Locascio*, 6 F.3d 924, 949 (2d Cir. 1993) (refusing to impute knowledge of FBI agents not involved in prosecution to FBI agents who were). After all, a too expansive definition of the prosecution team's custody and control "would condemn the prosecution of criminal cases to a state of paralysis." *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) (citation modified).

## ARGUMENT

The Court should deny the defendants' motions to compel. The defendants seek an order compelling production of "all documents that relate to the circumstances which gave rise to [their] transfer from Mexico to the United States… [including] communications between representatives of the two governments and internal documents within the United States government agencies and offices, to include the Departments of Justice and State and the White House." Mot. 1-2. The requested documents and information, however, are (1) neither exculpatory under *Brady* nor

discoverable under Rule 16, and (2) not within the possession, custody or control of the prosecution team.

## I.  THE REQUESTED INFORMATION AND DOCUMENTS ARE NOT DISCOVERABLE UNDER EITHER *BRADY* OR RULE 16

The documents and information that the defendants seek are not discoverable because they are neither exculpatory nor material to any colorable defense.

"Under the Constitutional doctrine of *Brady v. Maryland*, 373 U.S. 83 (1963) and the statutory regime of Federal Rule of Criminal Procedure 16, defendants bear the burden of establishing their entitlement to the information they demand." *United States v. Nichols*, No. 1:21-CR-00117-RCL, 2023 WL 6809937, at *1 (D.D.C. Oct. 16, 2023).  To carry that burden, a defendant must "clearly identif[y] how the evidence [he seeks] would further the defense." *Apodaca*, 287 F. Supp. 3d at 40; *see United States v. Haldeman*, 559 F.2d 31, 73 n.71 (D.C. Cir. 1976) (affirming denial of motion to compel where defendant did not articulate why requested discovery was material to defense).  Arguments for disclosure must be "ground[ed] in facts" and "buttress[ed] with specific legal arguments." *Nichols*, 2023 WL 6809937, at *6.  "As the burden of the proposed examination rises, . . . the likelihood of a pay-off must also rise before the government can be put to the effort." *Brooks*, 966 F.2d at 1504.  A "snipe hunt" in which the defendant seeks to "review all of the materials and then determine what, if anything, supports a permissible argument" is not allowed.  *United States v. Guzman Loera*, No. 09 CR. 466 (BMC) (S-4), 2017 WL 2821546, at *7 (E.D.N.Y. June 29, 2017).

Here, the defendants propose to engage in precisely such a snipe hunt: They do not articulate or suggest any valid reason that the proposed documents or information may be exculpatory or otherwise material to the defense.  There is none.

1.  The defendants argue that the information they seek is subject to disclosure under *Brady*

because they may use it to argue that "the rule of specialty prohibits the augmentation of charges and penalties from those upon which the United States sought extradition." Mot. 29. But the rule of specialty has no colorable application to this case, so it cannot serve as the basis for discovery.[10]

The doctrine of specialty, which applies only to extradited defendants, provides that the government may prosecute an extradited defendant "only for the crime *for which he was extradited*." *United States v. Trabelsi*, 845 F.3d 1181, 1187 (D.C. Cir. 2017) (emphasis added) (quoting *Johnson v. Browne*, 205 U.S. 309, 317 (1907)). The doctrine is "limit[ed] to cases involving a formal extradition pursuant to treaty." *United States v. DiTommaso*, 817 F.2d 201, 212 (2d Cir. 1987); *see id.* (holding that a defendant who was deported could not invoke specialty); *United States v. Valot*, 625 F.2d 308, 310 (9th Cir. 1980) (same); *see* RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW § 477 (1987) (providing that specialty doctrine applies to "[a] person who *has been extradited*" (emphasis added)); ECF No. 797-2 at 6 (Art. 17 of U.S.-Mexico treaty provides that rule of specialty applies to "person[s] *extradited under the present Treaty*" (emphasis added)). In *Ker v. Illinois*, 119 U.S. 436 (1886), the Supreme Court explained that a defendant who was not extradited comes to the United States "clothed with no rights which a proceeding under the [extradition] treaty could have given him." *Id.* at 443. That was so, even though in that case—as in this one—the United States had *requested* the defendant's extradition, before obtaining custody of him through other means. *Id.* at 438; *see id.* at 443 (noting that such a defendant had no basis to object that he was convicted of a different offense than the one for which his extradition was requested).

---

[10] Moreover, defendants' theory (even if correct) would not support disclosure under *Brady* because defenses based on specialty "would not prove defendant free from fault, guilt or blame," and, instead, would at most support a "collateral attack[] on the indictment." *Blackley*, 986 F. Supp. at 603.

Here, it is undisputed that the defendants were not extradited to the United States. *See* Mot. Mot. 7-8, 15. Thus, they cannot invoke the doctrine of specialty. The defendants' speculation about possible defenses based on specialty therefore does not carry their burden of showing that the motion to compel should be granted. *See Nichols*, 2023 WL 6809937, at *1.[11]

The Court should likewise reject the defendants' argument that they might have rights or defenses similar to specialty based on informal assurances that the United States may have made to Mexico or on other "international conventions." *See* Mot. 29. The defendants cite no authority suggesting that any such rights or protections exist outside the right of specialty (which, again, applies only in the context of extraditions).

Further, the prosecution has conferred with the Department of Justice's Office of International Affairs (OIA) to determine whether it is aware of any assurances made to Mexico in connection with the defendants' transfers to the United States. OIA stated that the only such assurances were that (1) the defendants would have the same legal rights and protections as a criminal defendant charged with a crime under U.S. law and arrested in the United States, including the right to counsel, the right to confront witnesses at trial, and the right to review evidence and to respond to that evidence at trial, and (2) that the defendants would not be subject to the death penalty. In *Guzman-Loera*, the Court declined to order discovery of the government's extradition request of a different cartel leader, in part because the government made a similar proffer that it had conferred with OIA and confirmed that abstention from seeking the death penalty was the only assurance the United States gave in connection with that cartel leader's extradition. *See Guzman*

---

[11] Further, "[t]he case law of this Circuit is unclear as to whether 'a criminal defendant has standing to assert the principle of specialty, because only the requested state has the right to raise such an objection.'" *United States v. Tajideen*, 319 F. Supp. 3d 445, 470 (D.D.C. 2018) (quoting *United States v. Sensi*, 879 F.2d 888, 892 n.1 (D.C. Cir. 1989)).

*Loera*, 2017 WL 2821546, at *6.  The court should do the same here.

2.  Miguel (but not Omar) also argues that the information that he seeks is subject to disclosure under *Brady* because he was "acquitted in Mexican court of the same criminal conduct alleged in the indictment in this case."  Mot. 29; *cf.* ECF No. 800 at 23 (Omar declined to assert this argument).  That is supposedly relevant because "[e]xtradition law—including the bilateral treaty between the United States and Mexico— prohibits the extradition of a citizen from his home country after acquittal of the same charges."  Mot. 29.  Again there is no dispute that the defendants were not extradited, so any supposed rights they might have under "extradition law" do not apply.

In any event, Miguel is aware of—and presumably has access to documents from—the Mexican legal proceedings in which he was charged.  He therefore does not need to compel discovery of information about those supposed acquittals from the U.S. government.  *See Blackley*, 986 F. Supp. at 603-04 (declining to order discovery because "the defense is in basically the same position" as prosecution with respect to the information in question); *United States v. Zuazo*, 243 F.3d 428, 431 (8th Cir. 2001) (holding there is no *Brady* obligation to provide information "to which the defendant had access through other channels"); *cf. United States v. Agurs*, 427 U.S. 97, 103 (1976) (*Brady* concerns information "known to the prosecution but unknown to the defense").

3.  Finally, throughout their motions, both defendants suggest that there was something improper or illegal about the Mexican government's decision to transfer them to the United States. *See* Mot. 12, 17, 28 (calling the transfer "unprecedented," a "forced removal," and "in violation of a Mexican court order").  These suggestions, however, do not articulate any valid basis to compel discovery because the supposed impropriety of defendants' transfer to the United States is neither exculpatory nor material to any colorable defense.

A court generally "need not inquire as to how [a criminal defendant] came before it."

*United States v. Alvarez-Machain*, 504 U.S. 655, 662 (1992).  Instead, "[i]t is well settled that a district court has personal jurisdiction over any party who appears before it, regardless of how his appearance was obtained."  *United States v. Lussier*, 929 F.2d 25, 27 (1st Cir. 1991).  Thus, in a line of cases known as the *Ker-Frisbie* doctrine, "[t]he Supreme Court has squarely held, and repeatedly reaffirmed" that "a court should not divest itself of jurisdiction over a defendant when no treaty (or statute) requires it to do so and when the defendant has not suffered torture, brutality, or similar outrageous conduct during his apprehension or interrogation."  *United States v. Khatallah*, 160 F. Supp. 3d 144, 147 (D.D.C. 2016) (discussing *Ker v. Illinois*, 119 U.S. 436 (1886) and *Frisbie v. Collins*, 342 U.S. 519 (1952)).  Here, defendants concede that "no treaty or statutory law [] appears to govern the factual scenario under which [they were] removed," Mot. 4, and they make no claim to have been tortured or subjected to otherwise outrageous conduct.

If that were not enough, the Supreme Court's application of the *Ker-Frisbie* doctrine in *Alvarez-Machain* forecloses any challenge to personal jurisdiction here.  In that case, a defendant challenged his forcible removal from Mexico to the United States, which the district court found that U.S. law enforcement had orchestrated.  *See Alvarez-Machain*, 504 U.S. at 658-59.  But, as the Supreme Court explained, the extradition treaty between Mexico and the United States did not "purport to specify the only way in which one country may gain custody of a national of the other country for the purposes of prosecution."  *Id.* at 662, 664.  Thus, the defendant had no defense based on—and courts had no "need [to] inquire" into—the manner in which the defendant's presence was obtained.  *Id*. at 657; *cf. Ker*, 119 U.S. at 441 ("[I]t is hardly a proper subject of inquiry on the trial of the case to examine into the details of the proceedings by which [a] demand

12

was made by the one state, and the manner in which it was responded to by the other").[12]

For these reasons, the requested documents and information are neither exculpatory nor material to any colorable defense. There is no basis to compel discovery because defendants have failed to carry their "burden of establishing their entitlement to the information they demand." *Nichols*, 2023 WL 6809937, at *1.

## II.   THE REQUESTED INFORMATION IS NOT IN THE POSSESSION, CUSTODY OR CONTROL OF THE PROSECUTION TEAM

Even if the requested information and documents were discoverable, they are not within the possession, custody or control of the prosecution team. Here, the Criminal Division's Money Laundering, Narcotics and Forfeiture Section (MNF) and the three United States Attorney's Offices with which it has partnered do not possess any communications with "representatives of Mexico . . . concerning the transfer of defendants from Mexico to the United States." Mot. 1. These four prosecuting offices have also made a good-faith inquiry with the investigative agents with whom they worked, who reported that they likewise have none. Any documents that the prosecution team has regarding the defendants' transfers are "reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." Fed. R. Crim. P. 16(a)(2). Such internal government documents are exempt from discovery under Rule 16(a)(1)(E) and, because they are not exculpatory, they also are not subject to disclosure under *Brady*.

---

[12] Moreover, the act-of-state doctrine provides an independent reason that the Court should not entertain any argument that that the Mexican government's decision to transfer the defendants was illegal under Mexican law. Under that doctrine, "American courts are prohibited from questioning the validity of a foreign sovereign power's public acts committed within its own territory." *United States v. Trabelsi*, 28 F.4th 1291, 1299 (D.C. Cir. 2022); *cf. id.* (observing that "[i]n the context of extradition proceedings, courts have refrained from finding extradition orders issued by the state executive invalid under the act of state doctrine").

The defendants nonetheless demand documents and information from "the White House, the Department of Justice, the Office of the Attorney General [(OAG)], the Office of International Affairs of the Department of Justice [OIA]. . . ."  Mot. 13-14.  Courts have rejected similar discovery demands before.  *See, e.g.*, *Guzman Loera*, 2017 WL 2821546, at *7 (rejecting cartel leader's demand for "discovery of communications between the United States and Mexico because it is not within the custody or control of the prosecution team"); *United States v. Saab Moran*, No. 19-20450-CR, 2022 WL 4291417, at *4 (S.D. Fla. Sept. 15, 2022) (rejecting defendant's request for discovery for extradition-related documents from OIA and the Department of State).  This Court should do the same here.

The Department of Justice's OIA and the Department of State are not part of the prosecution team.  To be sure, "[a]cting either directly or through the Department of State, OIA initiates all requests for provisional arrest of fugitives pursuant to extradition treaties."  *Saab Moran*, 2022 WL 4291417, at *4 (quoting U.S. Dep't of Just., Just. Manual § 9-15.210).  But "extradition proceedings and criminal prosecutions are legally distinct events."  *Saab Moran*, 2022 WL 4291417, at *4.  In extraditions, OIA and the Department of State "operate[] at the prompting of, but independently from, Assistant United States Attorneys and Trial Attorneys who prosecute cases."  *Id.*  They "are aligned in neither intent nor purpose with the prosecution team."  *Guzman Loera*, 2017 WL 2821546, at *7.

This same reasoning applies regardless of the means by which defendants are brought to the United States.[13]  The Department of State and the Office of International Affairs may have communicated with Mexican government officials regarding the transfer of defendants to the

---

[13] The Justice Manual specifies that, when a fugitive is not subject to extradition, OIA will advise prosecutors on alternative methods available to secure the fugitive's return.  Just. Manual § 9-15.600.

United States.  *See* Mot. 28 (quoting Attorney General's congratulations to OIA for its "critical assistance securing the transfer of these fugitives to the United States to face justice."). But communicating regarding transfers of fugitives is not the same as communicating about charging decisions and does not make OIA or the Department of State "part of the 'prosecution team'" for purposes of Rule 16 or *Brady*. *Saab Moran*, 2022 WL 4291417, at \*4.

The defendants' request for documents from the entirety of the Department of Justice, the Office of the Attorney General, and the White House fares no better.  *See* Mot. 31.  In another case, this Court has held that the Office of the Attorney General "plainly" was not part of the prosecution team, even though many of its senior leaders were witnesses in the case and the Office had been "briefed" on a related investigation and "participated in . . . deliberations" on whether to bring related charges.  *Trump*, 753 F. Supp. 3d at 46.  Defendants do not point to any greater level of involvement of the White House, the Attorney General's Office, or any other component of the Department of Justice.  There is certainly no evidence suggesting that either the White House or the Attorney General's Office or another component of the Justice Department was engaged in "extensive cooperation with the [prosecution] in gathering evidence for the case" or otherwise had a "close working relationship" with the prosecution.  *Biaou*, 2026 WL 221768, at \*10.[14]

Here, the government has inquired whether the prosecuting offices—MNF, EDNY, WDTX, and SDTX—and their investigative teams possess any of the requested documents or information.  The government is not required, by Rule 16, *Brady*, or any other rule, to collect

---

[14] Further, even if in some instances, documents within the possession of the departments and offices from which the defendants seek discovery might be considered within the custody or control of the prosecution team, they are not here where the defendants have not articulated any reason the information those departments and offices might possess is material or exculpatory. *See supra* Sec. I; *cf. Brooks*, 966 F.2d at 1504 (noting that, in ascertaining a prosecution's team duty to search, "[a]s the burden of the proposed examination rises, [] the likelihood of a pay-off must . . . rise before the government can be put to the effort").

documents outside the prosecution team's possession, custody or control.

## CONCLUSION

For the foregoing reasons, the Court should deny the Motions.

Respectfully submitted,

MARGARET A. MOESER
Chief
Money Laundering, Narcotics
and Forfeiture Section Criminal Division
U.S. Department of Justice


By:    */s/ Erik Cervantes*
ERIK CERVANTES
KIRK HANDRICH
D. HUNTER SMITH
JAYCE BORN
Trial Attorneys
Money Laundering, Narcotics
and Forfeiture Section
Criminal Division
U.S. Department of Justice

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served via ECF to counsel of record, on Friday, April 17, 2026.

By:      */s/ Erik Cervantes*
Erik Cervantes
Trial Attorney
Money Laundering, Narcotics
and Forfeiture Section
Criminal Division
U.S. Department of Justice