U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| PLAINTIFF | § | |
| | § | |
| V. | § | CASE NO. 08-CR-00057-TNM |
| | § | |
| MIGUEL ÁNGEL TREVIÑO-MORALES (4) | § | |
| DEFENDANT | § | |

**DEFENDANT MIGUEL ÁNGEL TREVIÑO-MORALES' REPLY**
**TO THE GOVERNMENT'S OBJECTION TO THE CERTIFICATION OF THE APPEALABILITY**

COMES NOW Defendant Miguel Ángel Treviño-Morales, by and through his attorney, and replies to the Government's objection to this Court certifying the appealability of its order denying his motion requesting the lifting of the special administrative measures unilaterally imposed by the Government.

The Government asserts (ECF No. 828) that Miguel Treviño failed to specify the statute upon which the appeal request is based, inferring that said request is based pursuant to 28 U.S.C. § 1292(b), and therefore precluding the issuance of a certificate of appealability because that provision governs appeals in "civil actions" and not criminal actions. The Government also contends that the defendant does not identify any "controlling question of law as to which there is a substantial ground for difference of opinion," therefore failing to meet a prerequisite for a certificate of appealability.

The primary basis of Defendant's motion for certification is the "Collateral Order Doctrine" established by the Supreme Court in *Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541 (1949)*. This doctrine applies to claims that are *"too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." Id.* In accordance with this doctrine, a defendant may seek an interlocutory appeal without being limited to "all final decisions" as provided by 28 U.S.C. § 1291. The

1

Collateral Order Doctrine was discussed by the Supreme Court in *Will v. Hallock,* 546 U.S. 345 (2006), where Justice SOUTER, citing various cases, described this order is *"best understood not as an exception to the 'final decision' rule laid down by Congress in § 1291, but as a 'practical construction' of it*." Digital Equipment Corp. v. Desktop Direct, Inc., 511 U.S. 863, 867, 114 S.Ct. 1992, 128 L.Ed.2d 842. The Supreme Court held a party is entitled to appeal "*from a narrow class of decisions that do not terminate the litigation, but must, in the interest of "achieving a healthy legal system," cf.* Cobbledick v. United States, 309 U.S. 323, 326, 60 S.Ct. 540, 541, 84 L.Ed. 783 (1940). Under this doctrine, *"appellate authority to review "all final decisions of the district courts," § 1291, includes jurisdiction over "a narrow class of decisions that do not terminate the litigation," but are sufficiently important and collateral to the merits that they should "nonetheless be treated as 'final,' "* (Will, supra, at *345, citing Digital Equipment Corp). An order may be subject to appeal under the collateral-order doctrine if it: "(1) conclusively determines the disputed question, (2) resolves an important issue completely separate from the merits of the action, and (3) is effectively unreviewable on appeal from a final judgment." Ameziane v. Obama, 620 F.3d 1, 5 (D.C. Cir. 2010) (citing Will v. Hallock, 546 U.S. 345, 349, 126 S.Ct. 952, 163 L.Ed.2d 836 (2006)).

The order denying the defendant's motion against the Special Administrative Measures meets those three requirements.

**[1] It conclusively determines the disputed question**.

The U.S. Court of Appeals for the District of Columbia Circuit, in deciding O'Connell v. United States Conference of Catholic Bishops, 134 F.4th 1243, at *1252 (2025), cited several Supreme Court cases in defining this factor of the collateral-order doctrine. The Circuit noted that *"An order is conclusive when it is the "complete, formal, and, in the trial court, final rejection of"*

the issue." *Abney v. United States, 431 U.S. 651, 659, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977)*. Furthermore, it stated that *"The decision must "not constitute merely a 'step toward final disposition of the merits of the case.'"* Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 171, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (citing Cohen, 337 U.S. at 546, 69 S.Ct. 1221).   Similarly, the Supreme Court, in deciding *Abney v. U.S., 431 U.S. 651, at \*658 (1977)*, applied *Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949)*, and noted that the District Court's order in question was a *"final decision"* within the meaning of the statute, because *"the District Court's order had fully disposed of the question of the state security statute's applicability in federal court; in no sense, did it leave the matter "open, unfinished or inconclusive.""*

In the instant case, the order for which certification of appeal is sought is indeed one that, by its nature, must be considered "conclusive" for the purposes of the collateral order doctrine, since the disputed issue regarding the constitutionality of the conditions of restriction and isolation tantamount to torture, which have been imposed on Mr. Treviño pursuant to the SAMs, was definitively resolved. It is critically important to note that the District Court's order denying relief from abusive pretrial conditions of confinement addressed constitutional issues of punishment to a person who is presumed innocent. As noted in Mr. Trevino's original motion seeking relief, his claims were based in large part on the Government's actions constituting "punishment," a constitutional violation which cannot wait until the case is over. The SAMs to which Mr. Treviño is subject remain in effect until April 15, 2027, a period during which the District Court will not review, issue a ruling on, or discuss this matter again, nor will it be addressed during the trial.

Therefore, the order denying the motion to revoke the SAMs is conclusive on the disputed issue, and consequently the conditions of confinement and restrictions at issue will remain in effect

3

for as long as they remain in force, with no opportunity for further review in this court, because the contested decision does not even constitute a *"step toward final disposition of the merits of the case (which would) be merged in final judgment,"* and it is also independent of the subject matter of the trial.

**[2] It resolves an important issue that is entirely separate from the merits of the case**.

The second factor of the collateral order doctrine is also satisfied in the present case. The order for which certification of appeal is sought is an *important issue* and is *completely separate from the merits of the action*. Mr. Treviño's interests in being free from punishment before conviction (under the Fifth and Fourteenth Amendments) and in communicating with his family (an interest protected by the First Amendment) are of paramount importance within the U.S. constitutional framework; and the right of every person not to be punished before a guilty verdict, after the exhaustion of due process, is widely recognized by the courts.

The D.C. Circuit recognized in Hatch v. District of Columbia, 184 F.3d 846, at *849 **269 - *850 **270 (1999), that pursuant to the precedents of the Supreme Court (primarily the one established in), inmates in this country, especially those awaiting trial and whose guilt has not been established, have a recognized interest in liberty and in not being punished before being sentenced, so that *"[T]hough his rights may be diminished by the needs and exigencies of the institutional environment, a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime."* and *"There is no iron curtain drawn between the Constitution and the prisons of this country."* (See *Wolff v. McDonnell, 418 U.S. 539, 555, 94 S.Ct. 2963, 41 L.Ed.2d 935, at 555–56 (1974)*). There, the D.C. Circuit held that "The constitutional protections retained by prisoners include those afforded by the Due Process Clause against arbitrary deprivations of 'liberty." Some protected liberty interests flow directly from the Due Process Clause itself." *Id., at *849 **269,*

4

*184 F.3d 846, 337 U.S.App.D.C. 266*. In this regard, *Wolff* concluded that ""a person's liberty is... protected, even when the liberty itself is a statutory creation of the State" because "[t]he touchstone of due process is protection of the individual against arbitrary action of government." *Id*. at 558, 94 S.Ct. 2963 (citing Dent v. West Virginia, 129 U.S. 114, 123, 9 S.Ct. 231, 32 L.Ed. 623 (1889)).

In discussing this second factor of the Collateral Order Doctrine, the Supreme Court noted that for an order to be considered to resolve a significant issue entirely independent of the merits of the case, "the decision was not simply a "step toward final disposition of the merits of the case (which would) be merged in final judgment"; rather, it resolved an issue completely collateral to the cause of action asserted " *Abney, supra 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651, at \*658,*

For its part, the Circuit in *O'Connell, supra, 134 F.4th 1243, at \*1252*, distinguished the statement that *"Orders are 'entwined with the merits' when 'courts of appeals will often have to review the nature and content of' the merits to determine the issue on appeal*." Richardson-Merrell, 472 U.S. at 439, 105 S.Ct. 2757. The Circuit also noted that *"Although complete separation is not required, the asserted interest on appeal must be 'conceptually distinct.'"* Mitchell v. Forsyth, 472 U.S. 511, 527, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

The ruling on the constitutionality of the SAMs and their application against Mr. Treviño is not intertwined with the nature and merits of the case; there is no connection whatsoever between the conditions of torture and cruel and degrading treatment to which he is subjected and the merits of the charges against him. Furthermore, assessing the validity of the SAMs "does not touch on a defendant's guilt or innocence or any merits issues in the underlying case" (United States v. Trump, 88 F.4th 990, at \*1001 \*\*32 (2023)). Thus, the issues discussed in this petition, regarding the conditions of confinement to which Mr. Treviño is subjected under the SAM, are "completely separate from the merits of the action," i.e., whether Mr. Treviño is guilty or innocent of the crimes

charged; furthermore, "the issue is wholly separate as well from questions concerning trial procedures" (Sell v. U.S., 539 U.S. 166, at *2182 (2003), citing Coopers & Lybrand, 437 U.S., at 468, 98 S.Ct. 2454).

The order in question also satisfies the second factor of the collateral order doctrine. Both the Supreme Court and the D.C. Circuit have consistently recognized the importance of inmates' interest in avoiding punishment before a guilty verdict. In this case, the conditions of confinement to which Mr. Treviño is subjected amount to torture and are so grave that they cannot be ignored or deferred until the end of the trial; furthermore, the Court of Appeals would have no reason to review the constitutionality of the SAMs or their nature when deciding an appeal from the final judgment in the case.

**[3] It is indeed unappealable within the framework of an appeal against a final judgment**.

The Supreme Court held that to determine whether an order is "effectively unreviewable" only "where the order at issue *499 involves 'an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial." *Lauro Lines s.r.l. v. Chasser, 490 U.S. 495, at *499 (1989)*, citing Midland Asphalt Corp., 489 U.S., at 799, 109 S.Ct., at 1498, citing United States v. MacDonald, 435 U.S. 850, 860, 98 S.Ct. 1547, 1552, 56 L.Ed.2d 18 (1978). Justice SCALIA, in issuing his concurring opinion in *Lauro Lines, Id.,* noted on this point that "The importance of the right asserted has always been a significant part of our collateral order doctrine." Furthermore, he recalled that in *Abney*, supra, "we said that in order to qualify for immediate appeal the order must involve "an important right which would be 'lost, probably irreparably,' if review had to await final judgment." (*Lauro Lines, supra, at *502*)

6

This third question raised by *Cohen*—whether a right is "adequately vindicable" or "effectively reviewable"—" simply cannot be answered without a judgment about the value of the interests that would be lost through rigorous application of a final judgment requirement. Digital Equipment Corp. v. Desktop Direct, Inc., 511 U.S. 863, 114 S.Ct. 1992, 128 L.Ed.2d 842, 62 USLW 4457, 29 Fed.R.Serv.3d 399, 31 U.S.P.Q.2d 1010, at *864 (1994).

For this third factor, "[t]he crucial question" is "whether deferring review until final judgment so imperils the interest [at stake] as to justify the cost of allowing immediate appeal of the entire class of relevant orders." Mohawk Industries, Inc. v. Carpenter, 558 U.S. 100, at *109 (2009) That is, "it is not mere avoidance of a trial, but avoidance of a trial that would imperil a substantial public interest, that counts when asking whether an order is "effectively" unreviewable if review is to be left until later." Will v. Hallock, 546 U.S. 345, at *353 (2006), citing Coopers & Lybrand, 437 U.S.,at 468, 98 S.Ct. 2454.

The interest at issue in this case is one widely recognized as fundamental under the Constitution: the interest in liberty that, under the Fifth and Fourteenth Amendments, a detainee has in not being punished or tortured before a finding of guilt. The Supreme Court and the circuits largely agree, *recognizing that segregation can deprive an inmate of constitutionally protected "liberty." See, e.g., Hewitt, supra, at 472, 103 S.Ct., at 871–872; Rodi v. Ventetuolo, 941 F.2d 22, 28 (CA1 1991); Soto v. Walker, 44 F.3d 169, 172 (CA2 1995); Layton v. Beyer, 953 F.2d 839, 849 (CA3 1992); Baker v. Lyles, 904 F.2d 925, 929 (CA4 1990); Dzana v. Foti, 829 F.2d 558, 560– 561 (CA5 1987); Mackey v. Dyke, 29 F.3d 1086, 1092 (CA6 1994); Alston v. DeBruyn, 13 F.3d 1036, 1042–1043 (CA7 1994); Brown v. Frey, 889 F.2d 159, 166 (CA8 1989); Walker v. Sumner, 14 F.3d 1415, 1419 (CA9 1994); Reynoldson v. Shillinger, 907 F.2d 124, 126–127 (CA10 1990); McQueen v. Tabah, 839 F.2d 1525, 1528–1529 (CA11 1988); Lucas v. Hodges, 730 F.2d 1493,*

*1504–1506 (CADC 1984).* The conditions of isolation and deprivation to which Mr. Treviño is being subject, *"amount to an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.""* (Aref v. Lynch, 833 F.3d 242, 425 U.S.App.D.C. 274, at \*252, (2016), citing Sandin v. Conner, 515 U.S. 472, 115 S. Ct. 2293, 132 L.Ed.2d 418 (1995)). Furthermore, the Supreme Court recognized that a detainee *"may not be punished prior to an adjudication of guilt in accordance with due process of law."* Bell v. Wolfish, 441 U.S. 520, at \*535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). There, *"the Court expressed concern that a State would attempt to punish a detainee for the crime for which he was indicted via preconviction holding conditions."* (Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418, 63 USLW 4601, at \*485 (1995), citing *Bell*)

Historically, the Supreme Court has recognized the adverse effects of solitary confinement on prisoners. *"One hundred and twenty-five years ago, this Court recognized that, even for prisoners sentenced to death, solitary confinement bears "a further terror and peculiar mark of infamy.' In re Medley, 134 U.S. 160, 170, 10 S.Ct. 384, 33 L.Ed. 835 (1890); see also id. at 168, 10 S.Ct. 384 ("A considerable number of the prisoners fell, after even a short [solitary] confinement, into a semi-fatuous condition ... and others became violently insane; others, still, committed suicide").".* See Davis v. Ayala*, 576 U.S. 257, 135 S.Ct. 2187, 192 L.Ed.2d 323, at \*287-8 (2015)*, concurring opinion by Justice KENNEDY.

See also *Weems v. United States, 217 U.S. 349, 365–367, 30 S.Ct. 544, 54 L. Ed. 793 (1910)*: *"Confinement in a prison or in an isolation cell is a form of punishment subject to scrutiny under the Eighth Amendment"*). In *Davis*, *supra at \*289–290,* Justice KENNEDY noted regarding the issues of solitary confinement that *"Of course, prison officials must have discretion to decide that in some instances temporary, solitary confinement is a useful or necessary means to impose*

8

*discipline and to protect prison employees and other inmates. But research still confirms what this Court suggested over a century ago: Years on end of near-total isolation exact a terrible price. See, e.g., Grassian, Psychiatric Effects of Solitary Confinement, 22 Wash. U.J.L. & Pol'y 325 (2006) (common side-effects of solitary confinement include anxiety, panic, withdrawal, hallucinations, self-mutilation, and suicidal thoughts and behaviors).* The right to liberty of individuals subjected to isolation regimens equivalent to torture has also been widely recognized by various circuits; see *Williams v. Secretary of the Pennsylvania Department of Corrections, 848 F.3d 549, at 566 (2017)* (*"The robust body of scientific research on the effects of solitary confinement, combined with the Supreme Court's analysis in Wilkinson and ours in Shoats, further informs our inquiry into Plaintiffs' claim that they had a liberty interest in avoiding the extreme conditions of solitary confinement on death row. This research contextualizes and confirms the holdings in Wilkinson and Shoats: It is now clear that the deprivations of protracted solitary confinement so exceed the typical deprivations of imprisonment as to be the kind of "atypical, significant deprivation ... which [can] create a liberty interest.""*). Solitary confinement involves an experience that is *"psychologically painful, can be traumatic and harmful, and puts many of those who have been subjected to it at risk of longterm... damage." Id. at \*566*. In addition, *"the lack of opportunity for free movement is associated with more general physical deterioration. The constellations of symptoms include dangerous weight loss, hypertension, and heart abnormalities, as well as the aggravation of pre-existing medical problems." Id.*

There is a scientific consensus that exposure to long periods of isolating conditions, such as those to which Mr. Treviño is subjected, *"cause deep and long-term psychic harm. Such harm is the essence of the atypical and significant hardship inquiry required under Sandin and Wilkinson" Id. at \*569*

The District Courts have also recognized the negative effects of solitary confinement. See *United States v. Basiano*, 369 F. Supp. 2d 344 *; 2005 U.S. Dist. LEXIS 8066 ** at **22 (2005):

> *"More importantly, it is well documented that long periods of solitary confinement can have devastating effects on the mental wellbeing of a detainee. See, e.g., Craig Haney & Mona Lynch, Regulating Prisons of the Future: A Psychological Analysis of Supermax and Solitary Confinement, [\*353] 23 N.Y.U. Rev. L. & Soc. Change 477, 531 (1997) ("Direct studies of the effects of prison isolation have documented a wide range of harmful psychological effects, including increases in negative attitudes and affect, insomnia, anxiety, panic, withdrawal, hypersensitivity, ruminations, cognitive dysfunction, hallucinations, loss of control, aggression, rage, paranoia, hopelessness, lethargy, depression, emotional breakdowns, self-mutilation, and suicidal impulses. ... There is not a single study of solitary confinement wherein non-voluntary confinement that lasted for longer than 10 days failed to result in negative psychological effects.").*

The protected interest in liberty enjoyed by Mr. Treviño—namely, the right not to be punished before sentencing and not to be subjected to *"atypical and* significant" conditions of administrative segregation—is of paramount constitutional importance; it is a foundational element of due process, and its protection is essential to the preservation of the rule of law.

The interest protected here resembles that discussed in *Sell v. U.S., 538 U.S. 166 (2003)*, where the health consequences of the defendant's forced medication were irreparable, even after the sentence was imposed. Regarding the third factor of the "collateral order," the Court in Sell determined that *"Finally, the issue is (3) "effectively unreviewable on appeal from a final judgment." Ibid. By the time of trial Sell will have undergone \*177 forced medication—the very harm that he seeks to avoid. He cannot undo that harm even if he is acquitted. Indeed, if he is acquitted, there will be no appeal through which he might obtain review*."

10

Similarly, the assertion of Mr. Treviño's right to liberty cannot be deferred without being rendered meaningless, since the final judgment will not address the current SAMs, nor the conditions of segregation imposed on Mr. Treviño, nor the physical and mental harm being inflicted. Furthermore, once Mr. Treviño's innocence is established, he will no longer be a prisoner in pretrial detention, and the rights that are currently being violated by the contested restrictions will cease to exist.

Postponing the appeal of the order denying the defendant's motion challenging these confinement measures and restrictions would cause irreparable harm to the right sought to be protected, because the effects on Mr. Treviño's physical and mental health are irreversible and cannot be remedied in the final judgment or on final appeal. Therefore, the order is "effectively unappealable" for the purposes of the third Cohen factor, and the protected interest is sufficiently significant to warrant immediate review. Furthermore, allowing an immediate appeal on this issue would not affect any other procedural interest of the parties or any other public interest, as the proceedings would not be effectively delayed. The parties are still in the evidence review phase, and a trial date has not yet been set.

For these reasons expressed above, Mr. Trevino-Morales respectfully submits this motion for certification of appealability as to the Court's May 1, 2026, order denying Mr. Trevino-Morales' *Motion for Relief from Unconstitutional Special Administrative Measures.* It is respectfully requested that the Court certify its May 1, 2026, order denying defendant's motion referenced above.

11

Respectfully submitted,

*/s/ Michael McCrum*                                    */s/ William Purpura*

Michael McCrum                                         William B. Purpura, Attorney at Law
McCrum Law Firm                                        Purpura & Purpura
1659 TX-46 W, Ste. 115, P.O. Box 487          606 Baltimore Ave., Suite 301
New Braunfels, TX 78132                            Towson, Maryland 21204
Office 210.225.2285                                   Office 410-727-8550
Texas Bar No. 13493200                           Washington, D.C. Bar No. MD00074
michael@mccrumlegal.com                         wpurpura@purpuralaw.com

**Attorney for Miguel Ángel Treviño Morales**

**CERTIFICATE of SERVICE**

I, Michael McCrum, hereby certify that on May _____, 2026, I electronically filed the foregoing with the Court Clerk's Office using the CM/ECF system, which will send notice of such filing to all attorneys in the case.


*/s/ William Purpura*