UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| * * * * * * * * * * * * * * * * ) | |
| UNITED STATES OF AMERICA, ) | Criminal Action No. 08-00057 |
| Plaintiff, ) | |
| vs. ) | |
| MIGUEL TREVINO MORALES and OMAR TREVINO MORALES, ) | Washington, D.C. July 10, 2026 10:41 a.m. |
| Defendants. ) | |
| * * * * * * * * * * * * * * * * ) | |

TRANSCRIPT OF ARRAIGNMENT AND STATUS CONFERENCE
BEFORE THE HONORABLE TREVOR N. McFADDEN
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT:
HUNTER SMITH, ESQ.
KIRK K. HANDRICH, ESQ.
U.S. DEPARTMENT OF JUSTICE
1400 New York Avenue, Northwest
Washington, D.C. 20530

RUSSELL LEACHMAN, ESQ.
U.S. DEPARTMENT OF JUSTICE
601 Northwest Loop 410
Suite 600
San Antonio, Texas 78216

FOR THE DEFENDANT MIGUEL TREVINO MORALES:
WILLIAM B. PURPURA, JR., ESQ.
LAW OFFICE OF PURPURA & PURPURA
8 East Mulberry Street
Baltimore, Maryland 21202

MICHAEL McCRUM, ESQ.
LAW OFFICE OF MICHAEL McCRUM
1659 TX-46 West
Suite 115
New Braunfels, Texas 78132

APPEARANCES, CONT'D:

FOR THE DEFENDANT OMAR TREVINO MORALES: MANUEL J. RETURETA, ESQ.
RETURETA & WASSEM, PLLC
300 New Jersey Avenue, Northwest
Suite 900
Washington, D.C. 20001

REPORTED BY: LISA EDWARDS, RDR, CRR
Official Court Reporter
United States District Court for the District of Columbia
333 Constitution Avenue, Northwest
Room 6509
Washington, D.C. 20001
(202) 354-3269

THE COURTROOM DEPUTY: This is Criminal Case 08-57, *United States of America versus Miguel Trevino Morales and Omar Trevino Morales*.

The interpreters have been sworn.

Counsel, please come forward to identify yourselves for the record, starting with the Government.

MR. SMITH: Good morning, your Honor. Hunter Smith for the Government. With me at counsel table are my colleagues Kirk Handrich and Russell Leachman.

THE COURT: Good morning, counsel.

MR. McCRUM: Good morning, your Honor. Michael McCrum here for Miguel Angel Trevino. I'm also here with counsel William Purpura and Carmen Hernández, also for Miguel.

THE COURT: Good morning, counsel.

Good morning, Mr. Miguel Trevino Morales.

MR. BOYLE: Good morning, your Honor. Dennis Boyle. I'm here this morning on behalf of Omar Trevino Morales. With me here is Manuel Retureta. Thank you.

THE COURT: Good morning, counsel.

MR. RETURETA: Good morning.

THE COURT: Good morning, Mr. Omar Trevino Morales.

DEFENDANT OMAR TREVINO MORALES: Good morning, your Honor.

THE COURT: All right. Before we address the arraignment, I want to handle a couple motions that are pending. Since our last status conference in May, Miguel Trevino Morales and Omar Trevino Morales have each filed a motion for the Court to issue a certificate of appealability as to one of its rulings at the May status conference. In the motion at ECF No. 824, Omar Trevino Morales asked the Court to, quote, "certify the appealability of its order denying his motion seeking local detention," closed quote, from Page 1.

In his motion at ECF No. 27, Miguel Trevino Morales, quote, "requests this Court to certify the appealability of its order denying his motion seeking relief from special administrative measures," closed quote, also from Page 1.

The Court addressed these motions together and will deny them both.

The statutory authority the Defendants cite for the Court to certify the appealability of interlocutory order is 28 USC 1292. That provision states that, quote, "When a district judge in making a civil action, an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there's a substantial ground for difference of opinion, and that an immediate appeal from the order may

materially advance the ultimate termination of the litigation, he shall so state in writing in such order," closed quote. That's from Subparagraph (b).

By its plain term, that provision is limited to civil actions.

I'm also looking to Wright & Miller's 16 *Federal Practice and Procedure Jurisdiction*, Section 3929, Third Edition, which states: Section 1292(b) is limited by its terms to civil actions in a district court. It is not available in criminal cases (collecting cases).

Section 1292(b) thus does not authorize the Court to issue a certificate of appealability in this criminal case.

In any event, the Court concludes that neither Defendant satisfies 1292(b)'s requirements. To the Court's eyes, neither its ruling on the motion to compel local detention nor on the motion for relief from special administrative measures, quote, "involves a controlling question of law as to which there's a substantial ground for difference of opinion," closed quote.

The Court also finds the immediate appeal from those orders would delay rather than, quote, "materially advance the ultimate termination of litigation," closed quote.

Instead, Defendants may renew their respective

motions in this Court as the trial approaches and Defendants may also raise the same constitutional issues, if required and appropriate in post-trial motions and in any appeal therefrom.

For all these reasons, the Court denies motions ECF 824 and 827.

We'll go ahead and arraign the Defendants on the superseding indictment.

Can I ask the two Defendants to approach the podium with one of your attorneys. Gentlemen, the indictment is directed to you, but typically your attorneys reply on your behalf.

Ms. Chaclan?

THE COURTROOM DEPUTY: Miguel Trevino Morales and Omar Trevino Morales, in Criminal Case 08-57, in which you are both charged by a superseding indictment on Count 1, continuing criminal enterprise; Count 2, conspiracy to distribute 5 kilograms or more of cocaine and 1,000 kilograms or more of marijuana for importation into the United States; Count 3, use of a firearm; Count 4, international money-laundering conspiracy, do you waive the formal reading of the superseding indictment and how do you wish to plead?

MR. McCRUM: On behalf of Miguel Angel Trevino, we waive the reading of the formal indictment and he pleads not

guilty as to all counts.

MR. BOYLE: On behalf of Omar Trevino Morales, we waive the further reading of the indictment and he pleads not guilty to all counts.

THE COURT: Thank you, gentlemen. You all may have a seat.

All right. Mr. Smith, where do things stand at this point?

MR. SMITH: Good morning, your Honor.

We gave our status report on discovery when we were here about six weeks ago. I think we at that time said we were close to being -- having all Rule 16 discovery of which we're aware produced. I mentioned that there are two additional productions we needed to make. Those productions have been made. So at this point, all of the Rule 16 of which the Government has been aware has been produced.

Of course, this has been a massive investigation, and the Government's continuing to review its files and may again find additional discovery that needs to be produced.

The other -- the Government submitted a proposed pretrial schedule with a number of proposed deadlines. One of the more labor-intensive tasks that stands before the Government right now is a CIPA review; time-intensive, I should say. But other than that, the Government is prepared to -- is prepared for trial.

We proposed a trial date in January, the end of January of 2028, at the last status conference. That seemed like it should be eminently doable. In fact, the Government could be prepared earlier. But that request is taking into account defense's representations that they need more time to prepare for trial.

It's also -- we've compared some similar cases in terms of the amount of time it's taken from a defendant's extradition or arrival in the United States to trial. The closest analogy that we could find is the --

MS. HERNANDEZ: Sorry. The Defendant's not -- the translation is not coming through.

MR. McCRUM: It needs to be louder.

THE INTERPRETER: (Assists the Defendants with the interpretation devices.)

MS. HERNANDEZ: Sorry, your Honor.

THE COURT: If it makes sense for the interpreter to sit between them and speak, we could do that.

THE INTERPRETER: Your Honor, the interpreter will try using the microphone closer to her mouth.

DEFENDANT MIGUEL TREVINO MORALES: (Nods head in the affirmative.)

THE COURT: Is that working?

DEFENDANT MIGUEL TREVINO MORALES: Yes.

THE INTERPRETER: Thank you, your Honor.

THE COURT: Thank you for saying something, sir. If there's anything you don't understand or you're not hearing, please do just what you did, both Defendants.

Mr. Smith?

MR. SMITH: Your Honor, I was discussing the pretrial schedule. We were comparing it to -- we were trying to find analogous cases. The closest analogy that we found in terms of recent cases is *United States versus Guzman-Loera*, which was a prosecution in the Eastern District of New York of -- for a cartel leader. In that case, there were 22 months between the defendant's arrival in the United States and the beginning of jury selection. The proposed -- the Government's proposed schedule in this case actually allows for 33 months.

So this is actually -- in the Government's view, it gives the defense plenty of time to review evidence and prepare for trial.

THE COURT: How long would you expect this trial to last?

MR. SMITH: Your Honor, our suggestion was to reserve ten weeks for the trial. But the Government would hope to only use eight of those weeks.

THE COURT: Okay. Thank you.

Anything else from you, Mr. Smith?

MR. SMITH: No, your Honor.

THE COURT: Okay. Let me hear from Mr. McCrum.

I guess -- I mean, we're a little limited in not having Mr. Thomas today, so I'm not sure that we'll be able to finally hammer all this out. But --

MR. McCRUM: We'll give it a shot.

THE COURT: -- let me know how you're feeling generally in terms of this timeline and where you are in discovery.

MR. McCRUM: All the lawyers here several times, Judge -- we've talked about this exhaustively, I think. We've really taken a really good look at what evidence has been produced or discovery has been produced.

Since the last hearing, he's had two -- I think actually we've had three productions of discovery since the last conference hearing. There's seven this year.

The unanimous feeling of the lawyers that are representing Miguel and Omar Trevino are that the trial date of -- first of all, that it's impossible to tell a trial date right now, because we have not been able to go through the evidence to see what pretrial motions can even be filed, what issues are coming up.

Try as we might, Judge, it's just literally impossible to go through everything, to analyze those issues, so that we can responsibly file motions that would be appropriate and in good faith.

And so in our view, Judge, it is premature to even set deadlines until we have an opportunity to review the discovery.

But if the Court is -- wants to get some deadlines on the books, it is unanimous among the lawyers that a January '28 trial date would be literally impossible for us to adequately represent our clients effectively, to prepare and review the evidence. And I can go -- I've got a lot of reasons why, Judge, if you want to hear those.

THE COURT: Not particularly. Not right now.

MR. McCRUM: Okay. But there's a lot of different reasons. We can go into the details of the discovery and the issues that are -- and the challenges that we're facing. There's a lot of different challenges. But I won't go into those details unless you want to hear them, Judge.

But our feeling is that we can't set dates right now. We would ask the Court to come back next year for an update and then we can. But in any event, a January '28 trial date is much too soon in analyzing the breadth of discovery that's been given to us.

As you already aware, there are over half a million recordings. That's just in and of itself -- that have been given to us, which far exceeds any of the cases that I think the Government's contemplating.

In actual man-hours, we have to just listen to

those, review them, analyze them, review over and over again. But again, I'm not going to go into the details of all the challenges that we're facing, Judge.

If you want just a roundabout, I think at the last conference you said to come back and at least you'd like to set a trial date within this decade. And I understand -- I can appreciate the Court's scheduling concerns.

But in our view, a trial any sooner than the fall of '29 would be too soon for us to adequately review the evidence and be ready for trial. Again, I can go into all the reasons of why, if the Court wants.

THE COURT: All right. Anything else from you, sir, at this point?

MR. McCRUM: No, sir, not unless you want those details.

THE COURT: Okay.

MR. McCRUM: The only response that Mr. Purpura added -- he was actually a lawyer in the *Guzman* case that counsel referred to in New York. There was a minimal amount of discovery in that case compared to the breadth of discovery that we've gotten. So it is not apples to apples; it's apples to oranges.

Plus, we're not even getting our final discoveries dump until this past month, which are dozens and dozens of videos, which is actual time. And so they're proposing a

trial date 15 months or 16 months from now. It's just -- it's literally impossible for us, Judge, for that and a lot of other reasons that I can go into in detail.

THE COURT: Thank you, Mr. McCrum.

Mr. Boyle? Or Mr. Retureta?

MR. RETURETA: Thank you, your Honor.

If I could just test the Court's patience for a little bit, not to get into everything. But what struck us when we first saw the Government's schedule was that December date of pretrial motions. And I think that kind of drives the arguments that are happening here right now. We're not even at that stage yet to be able to file effectively, completely, these pretrial motions.

So we had the idea of appearing for this hearing as a hearing where we would say, Well, look, everything's been done. We haven't received discovery for the past two months.

But that's not the case. As Mr. McCrum referenced, we just received about three releases in the last month and a half or so.

So given the fact that we have this other Co-Defendant, given the fact that we are still receiving material, I don't think we're in a position to identify a trial date, let alone identify a date whereby the defense can say we're ready to file pretrial motions, which, you

know, I'm sure the Court would expect would be thorough and comprehensive.

So I think we still need another time period to be able to identify them, because we haven't achieved the goals we want. We haven't achieved the goal of being here without discovery releases happening. We haven't achieved the goal of being able to tell the Court Mr. Omar Trevino Morales -- his ability to review, analyze with counsel and sanction these motions because of his situation, which is an ongoing situation with Lewisburg.

So given those factors, I think we're still jumping the gun on identifying a date for trial, let alone just motions in the future.

I would join with Mr. McCrum. We still need some more time. We need time to be able to tell the Court two things: It doesn't look like there's anything else. They haven't sent us anything. And my client, who is in Lewisburg, which is not the best place in the world to be able to review this type of evidence at this volume, we can't tell the Judge that he's in a knowledgeable position, that he has sat with counsel and received effective representation, given the parameters of Lewisburg. We can't tell the Court that.

So we would ask the Court to set another date, but no trial date, no motions date.

THE COURT: Thanks.

So as I say, I feel like we're a little hampered without Mr. Thomas here. So I don't intend to set additional -- any sort of deadlines at this time.

Let me just tell you what I'm thinking here. I'd be inclined for us to come back in about 60 days. At that point, I would very much hope to be setting at the very least a trial date. And maybe we figure out dates back from there; maybe we don't. And you all discuss it first.

But I want to respond to a couple points that defense counsel made.

I'm not going to wait until you all are in a position where you've reviewed all discovery before we set a trial date. I think especially with -- I don't know -- we've got probably close to a dozen attorneys involved here, so it's going to be tough finding a date that's going to work for everybody. And so I think we're going to set that date, recognizing that you will have work to do before that date, but have -- I think we can confidently expect that you will be ready for trial by that point. That's what I'm looking for.

And now that discovery is substantially over, I would certainly expect that within 60 days the defense attorneys can speak intelligently to that time period, recognizing that they will not have reviewed everything

within 60 days, but rather be able to tell me that they can be ready for trial by when they can be ready for trial.

In my mind, I'm thinking -- looking at a ten-week schedule, I'm thinking probably September of 2028, just so you all know that's kind of what I have in my mind. I think that will hopefully give defense -- that gives you nine more months than the Government is seeking. You're going to have an uphill battle to convince me that 2029 is the appropriate date. So just so you all know, I'm not deciding anything right now, but that's kind of what I'm leaning towards. And then we can work back from there.

I hear the concerns that December of this year is probably too soon for you to file motions. But I think we can find a deadline by sometime next year that would be realistic for you all to be able to file motions and give me time to resolve them, but also stay on that track.

So yes. I think I want to pick a date in two months, have Mr. Thomas with us and look to lock some of the big dates down then. I understand the defense concerns, but I'm going to push you to be in a place where we can at least pick a trial date even without you necessarily having reviewed everything within the next two months.

All right. So any concerns with that plan of action? Mr. Smith?

MR. SMITH: No, your Honor.

THE COURT: Mr. McCrum?

MR. McCRUM: No concerns with coming back in 60 days, Judge. I have a lot of concerns about September of '28. But no concerns in coming back. That makes complete sense, Judge.

THE COURT: Mr. Retureta?

MR. RETURETA: I join my co-counsel.

THE COURT: All right. Why don't we say 10:30 on September 10th. Does that work for the Government, Mr. Smith?

MR. SMITH: Yes, your Honor.

THE COURT: And for your client, Mr. McCrum?

MR. McCRUM: Yes, your Honor.

THE COURT: And for your client, Mr. Retureta?

MR. RETURETA: Yes, your Honor.

THE COURT: We'll set that for Mr. Rangel-Buendia and hope that Mr. Thomas is okay with that.

Let me just ask you all to make sure you're in touch together and with Mr. Smith and Mr. Thomas. Again, to the extent you all are able to agree on dates, I think that works out best for everybody.

I appreciate the Government -- I think the Government has started a good -- has given us a good starting point here, and I appreciate the Government doing that. But please make sure you're working offline with

defense counsel. And again, I think we need to -- we are quickly coming to the point where it's appropriate to set dates. So you all should be -- "We can't even discuss trial dates" is not going to be an appropriate response in two months.

All right. Mr. Smith, anything else we should be discussing today?

MR. SMITH: No, your Honor.

THE COURT: Do we need to do anything as to the speedy trial clock?

MR. SMITH: I believe it's already been designated as a complex case. But to the extent -- in an abundance of caution, if your Honor wishes to exclude time until the next status conference, that may be okay.

THE COURT: Mr. McCrum, any concerns with that? Anything else we should be discussing today?

MR. McCRUM: I could only hear half of what he said, Judge. I'm sorry.

THE COURT: As to the speedy trial clock, we think it's tolled by --

MR. McCRUM: Oh, yes. It's tolled, Judge. I think we've all -- this has been --

THE COURT: A complex case.

MR. McCRUM: Yes; from the beginning. Yes. No concerns on that, judge.

THE COURT: Mr. Retureta?

MR. RETURETA: Likewise, your Honor.

THE COURT: All right. Thanks. I agree with all the attorneys that my understanding is the speedy trial clock does not apply in this context, given the complex case designation. But to the extent it does apply, I would toll the speedy trial clock until our next meeting.

MR. McCRUM: Okay. One thing, Judge: We would like if the Court would allow us to visit with our clients here in the courthouse right now to explain what happened and the ramifications of that.

We've had the opportunity in two conferences to go and to meet in the conference room in the marshals' lockup area, and that worked perfectly.

Last time, we were only given about two minutes here at the gate, which for what happened today wouldn't allow sufficient time. So if we could prevail upon the Court to allow us to meet in the conference room at the lockup downstairs for, you know, 20 minutes literally just to explain what happened.

THE COURT: You're looking for your client or are you talking about --

MR. McCRUM: For both brothers, Judge, and all the lawyers.

THE COURT: Can you come up?

(Confers with the deputy marshal privately.)

All right. So the marshals have agreed for you to be able to talk individually with your Defendants. We're not going to do --

MR. McCRUM: Not together?

THE COURT: No.

MR. McCRUM: All right.

THE COURT: But it doesn't sound to me based on what you want to do that you need to do that. So I think Miguel will stay up here and his -- you're welcome to meet with him in the back.

And then, Mr. Retureta, you and Omar Trevino Morales and Mr. Boyle can go downstairs.

MR. McCRUM: Thanks, so much. I appreciate it.

THE COURT: Thanks, folks. Have a good weekend.

MR. SMITH: Thank you, your Honor.

MR. HANDRICH: Thank you, your Honor.

(Proceedings concluded at 11:09 a.m.)

**CERTIFICATE**

I, LISA EDWARDS, RDR, CRR, do hereby certify that the foregoing constitutes a true and accurate transcript of my stenographic notes, and is a full, true, and complete transcript of the proceedings produced to the best of my ability.

Dated this 27th day of July, 2026.

/s/ Lisa Edwards, RDR, CRR
Official Court Reporter
United States District Court for the
District of Columbia
333 Constitution Avenue, Northwest
Washington, D.C. 20001
(202) 354-3269